# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2237

_____

United States of America,

        Appellee,

v.

Mark David Maxwell,

        Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   District of Minnesota.
\*
\*
\*

_____

Submitted: March 16, 2011
Filed: July 8, 2011

_____

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Following a seven-day-long jury trial, Mark David Maxwell was convicted of one count of conspiracy to defraud the United States and two counts of aiding and assisting in the preparation of a false tax return. At trial, the government offered—without objection—evidence that Maxwell had failed to file personal income-tax returns from 2002 through 2007. Maxwell appeals, arguing that his personal filing history was impermissible specific-act character evidence, see Fed. R.

Evid. 404(b), which the district court[1] should have excluded or, at minimum, limited to a proper, non-propensity purpose, see Fed. R. Evid. 105. We affirm.

I.

From 2001 through at least 2004, Maxwell and his co-conspirators, Douglas Leiter, Timothy McCarthy, and Brian Scott, among others, were in the business of preparing income-tax returns. Maxwell's business was, in one way, no different than any legitimate tax preparer's: It attracted clients by offering to find ways to reduce their tax liabilities. But Maxwell had something special to offer, something no legitimate preparer could: His willingness to help his clients break the law to get results.

To that end, Maxwell's business marketed three different schemes to its clients. The first was to masquerade individuals as trusts. Clients would file a Form 1041, the income-tax-return form for estates and trusts, rather than a Form 1040, the form for individuals. They would include all of their individual income as "trust" income, only to turn around and enter a deduction in that same amount, ostensibly the "fiduciary fee" for managing the trust. The net result was that the form showed zero taxable income.

The second scheme employed a similar principle, this time on a Form 1040. Individuals would properly include their income on the form, but would then enter an itemized deduction for that same amount, along with the notation, "claim of right IRC 1341(a)(5)(B)."[2] This too gave the appearance of zero taxable income.

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

[2]Title 26, United States Code, Section 1341 accounts for situations in which a taxpayer includes an item in gross income in one taxable year, only to learn in a later

-2-

The third scheme was more complex. The group formed LLCs for their clients, which were, in turn, purportedly owned by non-profit clubs. The LLCs had no obligation to pay tax but rather were mere pass-through entities, required only to report to the Internal Revenue Service (IRS) the amount of income that had passed through to the owners, *i.e.*, the non-profit clubs. According to the conspirators, the clubs had no obligation to pay taxes by virtue of their status, nor could they be audited by the IRS. Leiter therefore described them as "black hole[s]." Trial Tr. at 719:9-14. Clients would then use the non-profits' bank accounts as their own, freely taking money for their personal use.

Maxwell, working with the other conspirators, assisted his clients in the preparation and filing of tax returns in accordance with these three schemes. The IRS was familiar with the first two, and it caught on quickly. It sent letter after letter to the conspirators warning that the submitted returns were frivolous and could result in criminal prosecution. So, in an effort to avoid detection, the conspirators employed a variety of evasive practices. Among other things, they changed the name and address of their business, disguised their signatures on their clients' returns, and required their clients to sign non-disclosure agreements. When the IRS refused to pay out on returns submitted pursuant to one of the schemes, the conspirators simply switched to another.

Eventually, the government brought this criminal prosecution against Maxwell, alleging one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 and 26 U.S.C. § 7206(2), and two counts of aiding and assisting in the preparation of a false tax return, also in violation of 26 U.S.C. § 7206(2). The government presented evidence of Maxwell's involvement in the schemes, of his co-

---

taxable year that he did not have a right to that item. In certain situations, the taxpayer can reduce his tax liability, or even receive a refundable credit, to offset the taxes paid on that item in the previous year. Maxwell's clients were not using this section properly.

conspirators' awareness of the illegality of their conduct, and of the conspirators' extensive efforts to conceal their activities from the IRS.

In addition, the government offered the testimony of Tim Mathers, an IRS employee who was familiar with the conspirators' personal filing histories. Mathers recounted each of those histories to the jury, including that Maxwell had not filed any returns whatsoever from 2002 through 2007. Maxwell, who chose to represent himself, did not object to the admission of this testimony.

After the close of evidence, the district court reviewed the proposed jury instructions with the parties. When they arrived at proposed instruction 31, "the bad acts instruction," the district court remarked:

> We don't have true bad acts evidence in this case. When I first read this instruction, I didn't have any idea what it was referring to. If I don't know what it's referring to, I'm afraid the jury won't know what it's referring to.

Trial Tr. at 1058:25-1059:4. The government explained that it had included "Rule 404(b) notice on the failure to file tax returns by Mr. Maxwell for the years 2002 . . . out of an abundance of caution," but that "[i]t wasn't actual 404(b) evidence." Id. at 1059:6-10. The district court then briefly explained Federal Rule of Evidence 404(b) to Maxwell, noted that it did not think there had been any Rule 404(b) evidence because everything "introduced about [Maxwell] was about the alleged conspiracy," as opposed to "other bad things," and proposed that instruction 31 be eliminated. Id. at 1059:11-1060:6. Maxwell agreed.

In its closing argument to the jury, the government suggested that Maxwell's failure to file returns from 2002 through 2007, among many other things, demonstrated his intent to defraud the United States. See id. at 1071:19-1072:2, 1079:7-1080:14. The jury later convicted Maxwell on all three counts.

Maxwell now argues that it was error for the district court to admit into evidence Mathers's testimony that Maxwell had not filed returns from 2002 through 2007 because there was no permissible purpose for which it could be offered; rather, it simply invited the jury to "punish the bad man because of [his] character[] despite what the evidence in the case shows actually happened." Advisory Committee's Note on Fed. R. Evid. 404(a). Furthermore, Maxwell says, even if that testimony was admissible for some proper purpose, the district court should have instructed the jury not to use it for another, improper purpose. See Fed. R. Evid. 105. He asks that we reverse his conviction and remand the case to the district court for a new trial.

II.

Because Maxwell did not object to Mathers's testimony at the time it was offered, we review its admission only for plain error. United States v. Ali, 616 F.3d 745, 751-52 (8th Cir. 2010). Maxwell therefore must demonstrate: "(1) an error; (2) that is plain; and (3) that affects substantial rights." United States v. Roundtree, 534 F.3d 876, 878 (8th Cir. 2008); Fed. R. Crim. P. 52(b). We will "correct a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 736 (1993) (internal quotation marks omitted).

Federal Rule of Evidence 404(b) prohibits the admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). It does not, however, prohibit the admission of such evidence if it is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. Whether Rule 404(b) prohibits the admission of a particular piece of evidence depends, therefore, on the purpose for which it is offered. See Huddleston v. United States, 485 U.S. 681, 687 (1988) ("Generally, [Rule 404]

do[es] not flatly prohibit the introduction of such evidence, but instead limit[s] the purpose for which it may be introduced.").

Maxwell argues that introduction of his failure to file income-tax returns from 2002 through 2007 had only one purpose: To invite the jury to convict him of the charged conspiracy offenses merely "because he is a deadbeat who does not pay his taxes." Appellant's Br. at 16. Therefore, he says, Rule 404(b) prohibited its admission. We disagree.

Rule 404(b) applies only to "other crimes, wrongs, or acts," Fed. R. Evid. 404(b); it "does not extend to evidence of acts which are 'intrinsic' to the charged offense," Advisory Committee's Note on Fed. R. Evid. 404(b). "This is because such acts are not truly separate bad acts that show propensity, but are intrinsic evidence which is inextricably intertwined with the crime charged." United States v. Heidebur, 122 F.3d 577, 579 (8th Cir. 1997) (internal quotation marks omitted). In conspiracy cases, like this one, in which the government is required to prove the existence of an agreement between the conspirators, see Moore v. United States, 178 F.3d 994, 1000 (8th Cir. 1999), "[t]he Government has considerable leeway in offering evidence of other offenses," Hanger v. United States, 398 F.2d 91, 102 (8th Cir. 1968). "[C]onsiderable leeway" is not, however, a special 404(b) standard for conspiracies, but rather inheres in the government's burden to prove additional offense elements—an agreement, voluntarily and intentionally reached, with the purpose of violating the law—that are not present in non-conspiracy cases. The addition of those elements makes additional acts of the defendants—including, in many cases, uncharged "bad" acts—relevant to proving the charged offense, not by way of improper propensity reasoning, but as proof of the existence of the conspiracy. See United States v. Aranda, 963 F.2d 211, 214 (8th Cir. 1992) ("Because this is evidence of the conspiracy itself, . . . the inference sought to be foreclosed by Rule 404(b), that a person of demonstrated criminal character can be presumed to have acted in conformity with that character, is not raised where the challenged evidence directly

supports the existence of the charged criminal conspiracy without regard to the defendant's criminal character.").

In order to meet its burden at trial, the government was required to offer evidence of the existence of a conspiracy and Maxwell's intention to be a participant in it. Accordingly, evidence "tend[ing] to make the existence" of a conspiracy "more probable" was relevant in that it helped to establish an element of the charged offense. Fed. R. Evid. 401. And Maxwell's tax-filing history helped to demonstrate that he was working in concert with the other conspirators. As Maxwell's co-conspirator, Leiter, put it: The group was working hard "to drop off the [IRS's] radar screen." Trial Tr. at 802:16-21. The conspirators' tax-filing histories were but one reflection of that goal.

Prior to 2001, Maxwell, Leiter, Scott, and McCarthy had each filed some form of return with the IRS. By 2003, none of them were filing any form of return. Maxwell, for his part, filed a Form 1040 in 1999, a Form 1041 (pursuant to the trust scheme) in 2000 and 2001, and no returns at all from 2002 through 2007. Trial Tr. at 660:22-661:5. Leiter filed both a Form 1040 and Form 1041 in 1998, a Form 1041 (pursuant to the trust scheme) each year from 1999 through 2002, and no returns at all from 2003 through 2007. Id. at 659:12-660:2. Scott filed a Form 1040 (pursuant to the claim-of-right scheme) in 1998 and 2000, but did not file a Form 1040 from 2001 through 2007. Id. at 660:3-12. And McCarthy filed a Form 1040 in 1998, but did not file a Form 1040 from 1999 through 2007. Id. at 660:13-18. That each had filed some form of return prior to 2001 but had all stopped filing any form of return by 2003 was evidence of their mutual cooperation. That history was therefore relevant, via valid, non-propensity reasoning, to a material issue in the case. See Advisory Committee's Note on Fed. R. Evid. 401 ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case."). Accordingly, Rule 404(b) was

inapplicable[3] and the district court did not err in admitting evidence of Maxwell's failure to file from 2002 through 2007.

It is always possible, of course, that a jury might use properly admitted evidence of a defendant's conduct in the way prohibited by Rule 404(b). Accord Huddleston, 485 U.S. at 691 (sharing "petitioner's concern that unduly prejudicial evidence might be introduced under Rule 404(b)"). When the risk of such a use is too high, the evidence can be excluded altogether. See Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). When that risk is lower, the defendant can request that the jury be instructed to use the evidence for proper purposes only. See Fed. R. Evid. 105 ("When evidence which is admissible . . . for

_____

[3]It is for this reason that Maxwell's citations to United States v. Reiss, No. Crim. 04-156 PAM/RLE, 2005 WL 2337917 (D. Minn. June 9, 2005), and United States v. Cadet, No. 08-CR-458 (NGG), 2009 WL 2959606 (E.D.N.Y. Sept. 11, 2009), are of no help. Richard Reiss was "charged with aiding in the preparation and presentation of false tax returns from 1999 through 2002." Reiss, 2005 WL 2337917, at *1. The government sought to introduce, among other things, evidence that Reiss had not filed timely tax returns from 1978 through 1989, and had not filed any tax returns from 2001 through 2004. Id., at *3. The district court, noting that "[t]he prior conduct involving the late filing of tax returns differs substantially from the alleged assistance in preparing fraudulent tax returns," excluded the evidence. Id. It concluded that "the prior acts evidence is relevant only to show that Reiss engaged in other misconduct with the Internal Revenue Service, thereby showing that Reiss has a propensity to disregard tax law," "precisely what Rule 404(b) prohibits." Id. Cadet is nearly identical.

Neither Reiss nor Cadet was a prosecution for conspiracy. Accordingly, in neither case was the government required to prove the existence of an agreement to violate the law. Evidence of Reiss's and Cadet's personal tax-filing history was thus relevant only by way of a prohibited inference: That because they had previously "engaged in other misconduct with the Internal Revenue Service," they were probably doing it again. See Cadet, 2009 WL 2959606, at *2; Reiss, 2005 WL 2337917, at *3.

one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.").

Maxwell did not request a limiting instruction pursuant to Rule 105, and we have "never found it to be plain error when a court does not give a limiting instruction of any kind sua sponte with respect to Rule 404(b) type evidence." United States v. Joos, 638 F.3d 581, 588 (8th Cir 2011); see also United States v. McGuire, 45 F.3d 1177, 1188 (8th Cir. 1995) ("The trial court need not issue a prior crimes limiting instruction sua sponte."). In any event, the lack of such an instruction did not affect Maxwell's substantial rights in light of the overwhelming evidence of guilt presented at trial. See Joos, 638 F.3d at 588.

Nor has Maxwell argued that the evidence should have been altogether excluded pursuant to Rule 403. Accord Huddleston, 485 U.S. at 691 n.8 ("[P]etitioner did not seek review of the Rule 403 balancing performed by the courts below. . . . We therefore do not address that issue."). He has, however, argued that Rule 404(b) required exclusion of the evidence because "its probative value [was] substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. His identification of Rule 404(b), rather than Rule 403, as the source of this requirement refers, it seems, to our cases including a Rule 403 analysis as the final component of an analysis under Rule 404(b). See, e.g., United States v. Stenger, 605 F.3d 492, 499 (8th Cir. 2010).

Prior to the adoption of the Federal Rules of Evidence, we "applied a balancing test to assess the use of evidence of other crimes," which included as its final factor an assessment of whether the evidence's "probative worth outweigh[ed its] probable prejudicial impact." United States v. Maestas, 554 F.2d 834, 836-37 n.2 (8th Cir. 1977). In United States v. Frederickson, we noted that Rule 403 "apparently ha[d] replaced" that final factor. 601 F.2d 1358, 1365 n.9 (8th Cir. 1979).

Many of our cases since have folded Rule 403's "substantially-outweighed" balancing into our Rule 404(b) analysis. See, e.g., Stenger, 605 F.3d at 499. Other times we have addressed it as a separate requirement, with Rule 403, rather than Rule 404(b), as its source. See, e.g., United States v. Moore, 639 F.3d 443, 447-48 (8th Cir. 2011) (addressing Rules 403 and 404(b) separately); accord Huddleston, 485 U.S. at 688, 691 n.8 (applying Rule 404(b) without performing the balancing required by Rule 403); cf. Advisory Committee's Note on Fed. R. Evid. 404(b) ("The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence . . . under Rule 403. . . . [T]he trial judge may exclude it only on the basis of those considerations set forth in Rule 403 . . . .").

In cases in which a defendant argues that both rules prohibit the admission of certain evidence, there is no practical difference whether we analyze the Rule 403 claim separately or instead as a subpart of Rule 404(b). When, however, a defendant asserts only Rule 404(b) as the basis for excluding the evidence, as Maxwell has, our cases leave some doubt as to whether that defendant has preserved a claim that the "probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. In light of that uncertainty, we will proceed to review for plain error whether the evidence should have been excluded pursuant to Rule 403.

Maxwell argues that the evidence that he had failed to file tax returns from 2002 through 2007 was of slight, if any, probative value, and was highly prejudical in that it portrayed him as a "habitual tax cheat who does not bother to file taxes." Appellant's Br. at 22. The government, in response, points out that "not all people are required to file tax returns and that, for 2002, the filing threshold was $7,700 in income." Appellee's Br. at 9. Therefore, it argues, Maxwell "is too quick to assume that the jury would have believed that [his] failure to file from 2002 through 2007

constituted a crime," apparently suggesting that Maxwell's failures to file returns in those years simply were not bad acts. Id. at 10.[4]

As explained above, we think Maxwell's failures to file returns from 2002 through 2007, when compared with the similar failures of his co-conspirators, were probative of the existence of a conspiracy. And although we are skeptical of the government's argument that the jury did not view those failures in a negative light, we cannot conclude that any "unfair prejudice" derived from their admission "substantially outweighed" their probative value. See Fed. R. Evid. 403. Moreover, given the overwhelming evidence of guilt presented at trial, we cannot conclude that the admission of this testimony affected Maxwell's substantial rights.[5]

---

[4]The government did not suggest such a benign view of this evidence in its closing argument to the jury:

> The second thing on Mr. Maxwell's own actions I wanted to touch on was his own tax filing history. You saw in 1999 he filed a 1040. He hadn't paid any taxes in. He owed some taxes based on his self-employment tax. He paid over time on a payment plan and worked out his 1999 taxes. But for 2000 and 2001 he made sure he didn't have to do that. He filed Forms 1041. He used that 1041 scheme and didn't pay any money with those tax returns. And he still hasn't paid on the money that was assessed for him for 2000 and didn't file any tax returns for 2002 through 2007. That's Mr. Maxwell's own tax filing and payment history.

Trial Tr. at 1080:4-14. Even though the government stopped short of suggesting that Maxwell's failures to file had been criminal, it plainly implied that those failures were, at minimum, suspicious.

[5]Maxwell's reply brief raises, for the first time, one additional claim of error: That "[b]ecause the district court first instructed Mr. Maxwell about the law pertaining to 404(b) evidence, then asked in a leading way whether he objected to omitting the 404(b) [jury] instructions, and did not later correct this error, Mr. Maxwell's [Sixth-Amendment] right to represent himself was abridged." Appellant's Reply Br. at 4.

-11-

III.

The conviction is affirmed.

_____

---

Because this claim was not raised in Maxwell's opening brief, it has been waived. See, e.g., K.D. v. County of Crow Wing, 434 F.3d 1051, 1055 n.4 (8th Cir. 2006).