# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2596
_____

United States of America

*Plaintiff - Appellee*

v.

Jose D. Drew, also known as Jose Drew

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: April 16, 2021
Filed: August 16, 2021
_____

Before KELLY, GRASZ, and KOBES, Circuit Judges.
_____

GRASZ, Circuit Judge.

After a botched gun sale to a confidential informant, a jury found that Jose Drew unlawfully possessed a gun, 18 U.S.C. § 922(g)(1), and the district court[1]

---

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

imposed a 360-month sentence. Drew challenges his conviction and his sentence. We affirm.

## I. Background

The government paid DeAnthony Smith to buy a gun from Drew's co-defendant, Maurice Jefferson. Smith and Jefferson arranged to meet in a parking lot. When Smith arrived, he found Jefferson and Drew in a parked car. Drew sat in the passenger's seat.

Peering into the car, Smith saw "a Glock . . . with a 25 round magazine" on the center console between Drew and Jefferson. Smith said that the gun stayed on the center console for the "majority of" the failed sale but eventually, Drew held it in his hand. A grand jury indicted Drew—who had six past felony convictions—for violating the federal ban on felons possessing firearms. *See* 18 U.S.C. § 922(g)(1).

When his trial began, the jury only needed to decide if Drew knowingly possessed a gun. The government called five witnesses, including Smith. Smith's eyewitness testimony placed Drew at the sale and the gun in his hand.

Special Agent Thomas Waggoner, who helped Smith arrange the sale, also testified. The government told the district court that it planned to ask Waggoner about Drew's past felonies.[2] Before admitting those convictions, the district court instructed the jury:

> You are about to hear evidence that the defendant was previously convicted of crimes involving a firearm. You may consider this

[2]Before voir dire, the district court discussed previewing Drew's felonies to the then-panel members and directing those members to only use the felonies for knowledge or intent, not "to automatically find him guilty." While the off-the-record voir dire sheds no light on what the panel (and eventual jurors) heard, Drew does not dispute that the panel heard about *a* felony.

evidence only if you unanimously find it is more likely true than not true. . . . You decide that by considering all of the evidence and deciding what evidence is more believable. This is a lower standard than proof beyond a reasonable doubt.

If you find this evidence has been proved, then you may consider it to help you decide, in this case, the defendant's knowledge of the presence of the firearm, a Glock, . . . and his intent to possess it. You should give it the weight and the value you believe it is entitled to receive. If you find this evidence has not been proved, then you must disregard it.

Instruction No. 12. Then, Waggoner testified that Drew had six felony convictions: one first-degree robbery; two second-degree robberies; and three "armed criminal action[s.]" And Waggoner testified that for each conviction, Drew "possess[ed] a handgun in connection with th[e] offense."

The government also presented DNA evidence from forensic scientist Sarah Yearsley. Yearsley's analysis identified Drew "as a possible contributor" to DNA swabs from the gun. While she expressed no knowledge about how the DNA got on the gun, she admitted that it could appear there even if he never touched it.

After the government rested, and during the jury-charge conference, the district court rejected Drew's proposed mere-presence instruction. That instruction would tell the jury that his "mere presence . . . at a location where the gun was found [wa]s not sufficient to establish beyond a reasonable doubt that [he] knowingly possessed the firearm[.]"

Instead, the district court's "possession" instruction (No. 21) included constructive- and joint-possession definitions. It told the jury that "[c]onstructive possession" meant that "[a] person who, although not in actual possession, ha[d] both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons[.]" It also told the jury that "joint possession" meant that "two or more persons shar[ed] actual or constructive possession of a thing." After deliberating, the jury found Drew guilty.

Before sentencing, the district court reviewed the parties' sentencing briefs and the presentencing investigation report ("PSR"). The PSR highlighted Drew's mental-health history, including diagnoses of, and treatment for, anxiety, depression, obsessive-compulsive disorder, post-traumatic stress disorder, schizophrenia, and social-anxiety disorder. Over his objection, the PSR (and a later filing) included allegations about Drew's violent conduct while awaiting sentencing in this case.

At sentencing, everyone agreed on Drew's: (1) total offense level (33); (2) criminal history category (VI); (3) statutory sentence range (fifteen years to life); and (4) United States Sentencing Guidelines Manual ("Guidelines") range (235 to 293 months). The government asked for 360 months and Drew asked for 84. Even though it declined to present evidence to support the PSR's in-custody allegations, the government pointed to those exact allegations to highlight Drew's future dangerousness. Drew, meanwhile, relied on family testimony to tie his in-custody conduct to mental-health-medication imbalances. Drew also said that one presentence assault (beyond the PSR's allegations) stemmed from his cooperation efforts.

In explaining the 360-month sentence, the district court mentioned that it considered the 18 U.S.C. § 3553(a) factors, Drew's past in-custody violations, and his parolee status during this case. It focused primarily on the recent in-custody allegations. In doing so, the district court emphasized concerns about public safety, respect for the law, and the armed nature of the crime.

Drew asks us to review three conviction-related challenges[3] and one sentencing challenge.

---

[3]Because Drew abandoned his first conviction-related challenge (an insufficiently developed sufficiency-of-the-evidence argument), we will not review it. *United States v. McDonald*, 826 F.3d 1066, 1072 (8th Cir. 2016) (standard of review); *United States v. Zavala*, 427 F.3d 562, 564–65 n.1 (8th Cir. 2005) (abandonment).

## II. Discussion

## A. Past Felony Convictions

Drew argues that the district court erred in admitting six past felony convictions. *See* Fed. R. Evid. 404(b). We review 404(b) admissions for abuse of discretion. *See United States v. Smith*, 978 F.3d 613, 616 (8th Cir. 2020). And we will only reverse those admissions when they "clearly had no bearing on the case and w[ere] introduced solely to prove the defendant's propensity to commit criminal acts." *Id.*

Rule 404(b) reflects the common-law tradition that seeks to avoid "overpersuad[ing] [the jury] as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Old Chief v. United States*, 519 U.S. 172, 181 (1997) (describing an earlier version of Rule 404(b)); *United States v. Jandreau*, 611 F.3d 922, 924 (8th Cir. 2010) ("*Old Chief* is limited to cases involving prior felony convictions[.]").

It does so by banning parties from using a prior-bad act as propensity evidence. Fed. R. Evid. 404(b) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). But in criminal cases, district courts can admit prior-bad-acts evidence for a non-propensity purpose like knowledge or identity. Fed. R. Evid. 404(b)(2). Yet "[w]e do not convict people of crimes simply because of their propensities; we do so because of what they have actually done." *United States v. Mothershed*, 859 F.2d 585, 589 (8th Cir. 1988).

"Courts properly admit evidence under Rule 404(b) if (1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value." *Smith*, 978 F.3d at 616 (cleaned

up) (quoting *United States v. Williams*, 796 F.3d 951, 959 (8th Cir. 2015)).  Because Drew conceded the second and third prongs, we limit our discussion to the first and the fourth.

At oral argument, Drew seemingly conceded that our precedent resolves the first prong (materiality) against him but he asks us to revisit it.  *United States v. Walker*, 470 F.3d 1271, 1274 (8th Cir. 2006).  Under *Walker*, a not-guilty plea in a felon-in-possession case makes past firearm convictions relevant to show "the material issue[s] of . . . *knowledge* of the presence of the firearm and his *intent* to possess it."  *Id.* (emphasis added).  Building on that precedent, *Smith* keeps intent in play even if the government only pursues a constructive-possession theory.  *Smith*, 978 F.3d at 616.  Relying on a sister circuit, Drew argues that intent to possess a firearm is not an element of § 922(g).  *See United States v. Linares*, 367 F.3d 941, 946, 948 (D.C. Cir. 2004) (concluding admission of a past arrest involving a loaded gun was not relevant to intent, knowledge, or absence of mistake).  Even if we question *Walker*'s wisdom, we cannot sidestep it.  *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (bound by earliest panel's decision).

Next, for the fourth prong: we ask if the potential prejudice of Drew's six felony convictions substantially outweighed whatever probative value they may have carried.  *See Smith*, 978 F.3d at 616.  "Damaging evidence is always prejudicial; the question is whether the evidence is *unfairly* prejudicial."  *United States v. Gant*, 721 F.3d 505, 510 (8th Cir. 2013).  Because Drew argued that the admissions violated both Rule 403 and Rule 404(b), "there is no practical difference whether we analyze the Rule 403 claim separately or instead as a subpart of Rule 404(b)." *United States v. Maxwell*, 643 F.3d 1096, 1102 (8th Cir. 2011); Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

At the outset, no record cite supports the government's suggestion that any weighing occurred before Waggoner testified about the felonies. Although "[t]his court gives great deference to the district court's weighing of the probative value of evidence against its prejudicial effect[,]" our careful review of the record leaves us without anything to which we can defer. *Gant*, 721 F.3d at 510.

Setting that aside, everyone seemingly assumes that the *first* conviction had some probative value. Because the government conceded that the first conviction would have "the same value" as the other five, we ask whether and when the scale tipped from probative to unfairly prejudicial. In other words, did the cumulative nature of the five felonies turn an initially permissible purpose (intent or knowledge) into an impermissible one (propensity)?

Rule 404(b), however, provides "[n]o mechanical solution" here. *See* Rule 404(b) advisory committee's note to the 1972 proposed rules (explaining that "[n]o mechanical solution" would guide the district court in weighing probative value against undue prejudice "in view of the availability of other means of proof and other facts appropriate for making decision[s] of this kind under Rule 403.").

The Supreme Court has not set a ceiling on the number of past convictions that the government can use to prove intent or knowledge in *any* case, let alone in a felon-in-possession case. We haven't, either. Nor have our sister circuits.[4] But we

---

[4]Of our sister circuits, only one unpublished opinion addressed a cumulativeness-bleeds-into-propensity issue. *United States v. Roberts*, 735 F. App'x 649, 651 (11th Cir. 2018) (unpublished). In that felon-in-possession case, the defendant challenged eleven of twelve convictions as cumulative and unfairly prejudicial. *Id.* The Eleventh Circuit upheld the admission of four felon-in-possession convictions. *Id.* at 652. But for the remaining armed robbery and aggravated assault convictions, the "balance tip[ped] against admissibility" because those convictions "arose out of *the exact same conduct*" as the other admitted convictions. *Id.* at 652–53. Indeed, "[t]he additional convictions [we]re therefore entirely cumulative and, as a result, virtually devoid of standalone probative value. Because the additional convictions d[id] not mark separate occasions when [the

upheld a decision to admit four past convictions for non-propensity reasons when paired with a limiting instruction. *United States v. Aldridge*, 664 F.3d 705, 714–15 (8th Cir. 2011) (affirming the admission of four drug-related convictions in a drug case when accompanied by a limiting instruction and two convictions were "*merely cumulative of other evidence establishing his knowledge and intent to participate in the conspiracy*" (cleaned up) (emphasis added)).

Nothing in the record tells us what made the five other convictions more probative than the first. Instead, the only articulated explanation stated that "obviously having done it two or three or four times is clearly more probative than one time." Oral Argument at 18:20. At best, that logic lacks an endpoint. At worst, it sounds like propensity reasoning.

Even so, we view the district court's limiting instruction (before Waggoner testified about the convictions) as important. Because "we have recognized that the presence of a limiting instruction diminishes the danger of any unfair prejudice from the admission of other acts[,]" the fourth 404(b) prong (weighing unfair prejudice) fails. *United States v. Wright*, 866 F.3d 899, 905 (8th Cir. 2017) (cleaned up) (quoting *United States v. Green-Bowman*, 816 F.3d 958, 964 (8th Cir. 2016)). Although we may share the concurrence's doubts about the effectiveness of limiting instructions, we see our precedent as instructive here. As a result, we cannot conclude that the district court abused its discretion in admitting Drew's past convictions.

---

defendant] knowingly possessed a firearm, they d[id] not advance the Government's case by further supporting the inference of intent." *Id.* at 653. And *Roberts* recognized that "[i]ntroducing the additional convictions increased the risk that jurors would engage in propensity reasoning." *Id. Roberts* reversed and remanded after concluding that the error was not harmless, despite multiple limiting instructions and an Eleventh Circuit presumption that juries follow those instructions. *Id.*

## B. Jury Instruction

Next, Drew challenges the district court's decision to reject his mere-presence instruction.

"A defendant is not entitled to a particularly worded instruction on his theory of defense, but he should be given an avenue to present his contention." *United States v. Franklin*, 960 F.3d 1070, 1072 (8th Cir. 2020). In reviewing instructions, "we will 'affirm if the entire charge to the jury, when read as a whole, fairly and adequately contains the law applicable to the case.'" *United States v. Sdoulam*, 398 F.3d 981, 993 (8th Cir. 2005) (quoting *United States v. Phelps*, 168 F.3d 1048, 1057 (8th Cir. 1999)).

*Franklin* informs our analysis. In *Franklin*, we upheld the denial of a mere-presence instruction when the instructions (as a whole) told the jury that the government needed to show more than "mere presence" to convict the defendant on a felon-in-possession charge. 960 F.3d at 1072–73. *Franklin* zeroed in on a constructive-possession instruction, which expressly banned the jury from convicting "based solely on [the defendant's] proximity to the gun." *Id.* at 1072. The requested instruction, we said, "would have been largely duplicative, and the instructions as a whole already conveyed that the government must prove more than proximity to the gun . . . to convict." *Id.* at 1073. Likewise, including a mere-presence instruction here "would have been largely duplicative" of the interlocking constructive- and joint-possession definitions. *See id.* As a result, the district court did not abuse its discretion in denying the mere-presence instruction.

## C. Sentencing

Last, Drew argues that the district court's upward variance amounted to a substantively unreasonable sentence because it relied on factors already accounted for by the Guidelines. "We review the substantive reasonableness of a sentence for abuse of discretion." *United States v. Long*, 906 F.3d 720, 727 (8th Cir. 2018). "The

-9-

district court may vary upward from the [G]uideline[s] range if the extent of the deviation is supported by the . . . § 3553(a) factors." *United States v. Martinez*, 821 F.3d 984, 989 (8th Cir. 2016) (vacating judgment and remanding for resentencing when upward variance was unreasonable). "While a district court may consider factors already taken into account in the [G]uideline[s] range, 'substantial variances based upon factors already taken into account . . . seriously undermine sentencing uniformity.'" *Id.* at 989–90 (quoting *United States v. Solis-Bermudez*, 501 F.3d 882, 885 (8th Cir. 2007)).

Everyone agrees that the sentencing court emphasized Drew's criminal history even after the Guidelines accounted for it. But they disagree on whether the district court gave that history too much weight like in *Martinez*. *Id.* at 990. According to the government, the *Martinez* defendant's criminal history included less violence than Drew's. But both defendants fell into the exact same criminal history category. *Id.* at 987.

Still, the district court gave other reasons for varying upward. *See Long*, 906 F.3d at 727. The district court said that it considered the § 3553(a) factors, the parties' sentencing briefs, their arguments, Drew's evidence, and his allocution. It also reviewed the PSR (both contested and uncontested allegations). And it mentioned Drew's earlier in-custody conduct (while serving state sentences), his criminal history, the timing of the felon-in-possession offense (while on parole for armed robberies), the need for respect for the law, and public safety. In looking at those reasons, we cannot say that the district court imposed a substantively unreasonable sentence. *See id.* at 728. In turn, it did not abuse its discretion.

### III. Conclusion

For these reasons, we affirm Drew's conviction and his sentence.

-10-

KELLY, Circuit Judge, concurring in the judgment.

I agree with the court's assessment of Drew's challenges to the sufficiency of the evidence supporting his conviction; the rejection of his proposed "mere presence" jury instruction; and the substantive reasonableness of his sentence. But I believe it was error to admit Drew's six felony convictions, and I write separately to address the district court's blurring of the boundaries of Rule 404(b).[5]

As the court explains, Rule 404(b) prohibits the admission of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); see also United States v. Cotton, 823 F.3d 430, 433 (8th Cir. 2016) ("Evidence of a defendant's prior convictions is categorically inadmissible to prove the defendant's criminal propensity."). But this evidence may be admitted to prove something other than character, such as a person's knowledge, motive, or intent. Fed. R. Evid. 404(b)(2). Here, the government, relying on Rule 404(b), introduced evidence of Drew's previous felony convictions from 2007 and 2012—three for robbery and three for armed criminal action. It did so by asking Special Agent Thomas Waggoner whether Drew had been convicted of each of the previous offenses and whether he possessed a handgun "in connection with this offense"; Agent Waggoner answered "yes" to these questions. On appeal, the government argues that this evidence was meant to demonstrate "that Drew knew of the presence of the firearm he was charged with possessing and intended to possess it."

---

[5]Considering this circuit's permissive precedent on the use of prior firearm convictions as 404(b) evidence in firearm possession cases, see, e.g., United States v. Williams, 796 F.3d 951, 960 (8th Cir. 2015); United States v. Smith, 978 F.3d 613, 616–17 (8th Cir. 2020), the district court's ruling is perhaps understandable. But I nevertheless believe it was error not to conduct a "case-specific analysis," United States v. Cotton, 823 F.3d 430, 433 (8th Cir. 2016), of how Drew's prior convictions helped the government prove his knowledge or intent. I therefore respectfully disagree with the court's holding that there was no abuse of discretion in the district court's ruling.

-11-

As an initial matter, I question how Drew's prior convictions help the government prove a material issue through anything other than propensity reasoning. This circuit has held that evidence of a defendant's previous firearm possession can be relevant to prove knowledge and intent. United States v. Walker, 470 F.3d 1271, 1274 (8th Cir. 2006). But in my view, it is not enough for the government simply to claim, in any firearm case, that such evidence "goes to the defendant's knowledge and intent" and therefore meets the relevance prong of our Rule 404(b) test. "Mere recitation" of these permissible purposes under Rule 404(b) "without an accompanying case-specific analysis risks couching criminal propensity in terms of knowledge, intent, or lack of mistake. Rule 404(b), by its own terms, requires more." Cotton, 823 F.3d at 435; see also United States v. Caldwell, 760 F.3d 267, 276 (3d Cir. 2014) (stressing "that a proponent's incantation of the proper uses of prior act evidence does not magically transform inadmissible evidence into admissible evidence" (cleaned up)). Specifically, it requires the government to "identify the permissible non-propensity purpose for" evidence it seeks to introduce and to "articulate the relationship between the evidence and a material issue in the case." United States v. Jackson, 856 F.3d 1187, 1192 (8th Cir. 2017) (quoting Cotton, 823 F.3d at 432).

In other words, to establish that the evidence it seeks to offer is relevant, the government must offer "some articulable inference for the jury to draw" from the previous conduct to a material element of the charged offense. United States v. Hall, 858 F.3d 254, 266 (4th Cir. 2017) (quoting United States v. Lynn, 856 F.2d 430, 436 (1st Cir. 1988)). Importantly, the inference the evidence invites cannot be "that the defendant had a bad character and therefore more probably had the intent to commit the crime he is now charged with." Id. (cleaned up) (quoting Lynn, 856 F.3d at 436) (requiring the government to "identify each proper purpose for which it will use the other acts evidence and explain how that evidence fits into a chain of inferences" that does not include inferences based on propensity); see also Caldwell, 760 F.3d at 276–77 ("[I]n proffering [404(b)] evidence, the government must explain how it fits into a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference. . . . To be sure, the

proffered evidence must be excluded if the proponent neglects or is unable to articulate this chain of inferences." (cleaned up)). Evidence of a defendant's prior conduct is inadmissible when its relevance comes solely through the character-based inferences Rule 404(b) seeks to prevent. See United States v. Hicks, 635 F.3d 1063, 1073 (7th Cir. 2011) (holding that admission of a defendant's prior convictions was impermissible where "the only apparent relevance of the prior convictions was the very inference that Rule 404(b) prohibits—that is, that [the defendant] had sold drugs in the past and probably did so this time as well").

The only material issue disputed at Drew's trial was whether he knowingly possessed the gun recovered from the car he was in. But how does the fact that Drew possessed firearms in 2007 and 2012 help the government prove that he knowingly possessed a firearm in 2018, when he was arrested under a completely different set of circumstances? Because the analysis is case-specific, there may be some situations where evidence of a defendant's possession of a firearm would be relevant in a way that does not rely on propensity inferences. For example, if Drew had claimed that he was unaware that the weapon was a real gun, perhaps the government could have offered his previous convictions to prove that he was "familiar with the touch and feel of an authentic firearm"—and therefore likely to have known that the gun he was observed holding was not a fake. Caldwell, 760 F.3d at 282. Or, if the firearm involved in Drew's previous convictions was the same one at issue in the present case, such evidence might have been admissible to help establish that Drew, and not someone else with access to the car, was in possession of the gun. See United States v. Miller, 673 F.3d 688, 695 (7th Cir. 2012) (allowing evidence of the defendant's prior possession of the gun he was on trial for possessing); cf. id. ("If the prior possession was of a different gun, then its value as direct or circumstantial evidence of the charged possession drops and the likelihood that it is being used to show propensity to possess guns rises considerably."). But "[u]nless there is a persuasive and specific answer to the question, 'How does this evidence prove intent [or knowledge]?' then the real answer is almost certainly that the evidence is probative only of propensity." Id. at 699.

The record here offers no satisfying explanation of how Drew's prior convictions help prove to the jury that he knowingly possessed the firearm at issue. The government's argument seems to be that the convictions made it more likely that Drew was aware there was a gun in the car with him and that he knowingly possessed that gun. But I do not see how his criminal record would have any bearing on his knowledge, other than through the unspoken inference it asks the jury to make: that because Drew possessed firearms in the past, he was more likely to have knowingly possessed the firearm in this case.[6] Indeed, the government appeared to make this very point at oral argument, explaining, "Some people have never possessed a weapon in their life. . . . The fact that he had it before, and in a criminal situation, tends to show that, yeah, he knew it this time." "This is propensity evidence, plain and simple." United States v. Brown, 765 F.3d 278, 293 (3d Cir. 2014); see also Caldwell, 760 F.3d at 282 (holding that Rule 404(b) forbade the introduction of a defendant's prior firearm convictions when the only conceivable reason for introducing those convictions was to show that if he "knowingly possessed firearms in the past, he was more likely to have knowingly possessed the firearm this time"). Because the government has failed to articulate how evidence of Drew's prior convictions "fits into a chain of inferences . . . that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference,"

---

[6]The way in which the government introduced Drew's prior convictions further leads me to believe that the only purpose of this evidence was to encourage the jury to the inference "once a gun possessor, always a gun possessor." For each of Drew's six convictions, the government asked Agent Waggoner two questions: whether Drew had been convicted of the charged offense and whether he possessed a gun "in connection" with that offense. And notably, the government never returned to Agent Waggoner's testimony or explained to the jury in closing argument how it should consider the fact of the prior convictions in reaching its verdict. While this bare bones approach may have made the evidence less prejudicial, see United States v. Williams, 796 F.3d 951, 960 (8th Cir. 2015), it also indicates that *all* the government wanted the jury to know about these convictions was that they involved firearms and that they existed. I struggle to see how the fact of Drew's prior convictions, standing alone, would help establish that Drew had knowing possession of the gun at issue here—other than through the assumption that his record simply made him more likely to possess guns.

Caldwell, 760 F.3d at 276–77, I would conclude that this evidence is not relevant to a material issue.

But even if we assume that one of Drew's prior convictions is relevant, here the government introduced six. The risk of unfair prejudice from introducing all six convictions substantially outweighs any probative value this evidence may have. The government argues that the fact that Drew had possessed a gun before is probative because it "tends to show" that Drew knowingly possessed the gun at issue here. Accepting for these purposes the validity of the government's argument, I still do not see the *additional* probative value of convictions two through six.[7] When questioned on this issue at oral argument, the government initially conceded that the second, third, fourth, fifth, and sixth convictions all have "the same value that conviction one would have," before adding, without further elaboration, "obviously having done it two or three or four times is clearly more probative than one time." If the additional convictions have the same value as the first, they are unnecessarily cumulative. See United States v. Wright, 993 F.3d 1054, 1061 (8th Cir. 2021) ("Even when evidence is relevant, however, the trial court may exclude it 'if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence'" (quoting Fed. R. Evid. 403)); see also Jackson, 856 F.3d at 1192 ("[W]e must closely scrutinize evidence of prior bad acts when the evidence is cumulative in nature."). If instead, as the government seems to suggest, they are probative because the jury might conclude that a person with multiple firearm-related convictions is more likely to possess a firearm again than a person with just one prior conviction, their probative value is dependent on conclusions the jury would make about Drew's character. As discussed above, this is precisely the type

---

[7]The introduction of convictions two, four, and six, all for armed criminal action, is especially problematic because these three convictions "arose out of the *exact same conduct*" as convictions one, three, and five, all for robbery. United States v. Roberts, 735 F. App'x 649, 653 (11th Cir. 2018) (per curiam). Put another way, the six convictions represent just three instances in which Drew possessed a gun. These additional convictions especially "are therefore entirely cumulative and, as a result, virtually devoid of standalone probative value." Id.

-15-

of propensity reasoning Rule 404(b) prohibits, and the additional convictions are therefore not probative in a way that makes them admissible under the Federal Rules of Evidence. Cf. United States v. Wright, 866 F.3d 899, 905 (8th Cir. 2017) (affirming the district court's admission of a single prior conviction where the court "declined to admit evidence of [the defendant's] other convictions specifically because it found that 'admitting evidence of multiple prior convictions . . . would be cumulative on the legitimate issues of intent, knowledge and lack of mistake while almost[ ]certainly giving rise to the improper, prejudicial conclusion that [the defendant] has a propensity to commit drug-distribution offenses'").

The potential prejudice of introducing five additional felony convictions, meanwhile, is significant. The trouble with "prior bad act" evidence, which Rule 404(b) seeks to address, is that "this type of evidence will overly influence the finders of fact and thereby persuade them to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." United States v. McBride, 676 F.3d 385, 395 (4th Cir. 2012) (cleaned up); see also Fed. R. Evid. 404(a) advisory committee's note to proposed 1972 rule ("Character evidence is of slight probative value and may be very prejudicial. . . . It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened."). As such, this evidence "almost always carries a risk of unfair prejudice." United States v. Gomez, 763 F.3d 845, 860 (7th Cir. 2014) (en banc). "The prejudicial impact is only heightened when character evidence is admitted in the form of a prior criminal conviction." Caldwell, 760 F.3d at 284; see also Cotton, 823 F.3d at 435 ("We do not underestimate the impact evidence of a prior conviction can have on a jury's assessment of a criminal case.").

Here, the government's 404(b) evidence showed more than just that Drew had unlawfully possessed guns in the past. Instead, the jury learned that he had been convicted six times for robbery and armed criminal conduct. It is difficult to imagine that evidence that Drew had committed multiple violent, armed offenses would not have left a strong impression on the jury, see Deena Greenberg, Note, Closing

Pandora's Box: Limiting the Use of 404(b) to Introduce Prior Convictions in Drug Prosecutions, 50 Harv. C.R.-C.L. L. Rev. 519. 545–46 (2015) (explaining the "significant" risk of unfair prejudice when jurors are presented with evidence of a defendant's prior convictions)—and may well have led them to believe that he was a dangerous person or at least one likely to commit gun crimes. The risk of these character-based conclusions means the evidence was unfairly prejudicial to Drew. Of course, every case must be considered on its own facts, and perhaps the potential prejudice that comes with evidence of a defendant's multiple prior convictions may be outweighed by the probative value of that evidence in some instances. See Miller, 673 F.3d at 697 (asking whether 404(b) evidence is "*too* unfairly prejudicial by invoking a propensity inference" (emphasis added)). But this is not one of those cases, as Drew's five additional convictions have seemingly no probative value that does not depend on propensity reasoning. Cf. United States v. Roberts, 735 F. App'x 649, 653 (11th Cir. 2018) (per curiam) (reversing the district court's decision to admit five of the defendant's twelve prior convictions where the "risk of prejudice" in introducing those convictions was "apparent," as "[i]ntroducing the additional convictions increased the risk that jurors would engage in propensity reasoning").

I also disagree that the limiting instruction was sufficient to eliminate the risk of unfair prejudice. We have recognized that "[t]he presence of a limiting instruction *diminishes* the danger of any unfair prejudice arising from the admission of other acts." Cotton, 823 F.3d at 435 (cleaned up) (emphasis added). But see United States v. Daniels, 770 F.2d 1111, 1118 (D.C. Cir. 1985) ("To tell a jury to ignore the defendant's prior convictions in determining whether he or she committed the offense being tried is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities."). But issuing a limiting instruction is not a cure-all. See Hall, 858 F.3d at 279 ("[E]vidence [improperly admitted under Rule 404(b)] cannot be rendered admissible simply because the district court provides a limiting instruction."); Roberts, 735 F. App'x at 653 (holding that a limiting instruction did not cure a 404(b) "error" because, "[a]lthough we presume juries follow limiting instructions, we have also acknowledged that despite limiting

-17-

instructions, it is very difficult for juries not to draw propensity inferences when prior convictions are admitted" (citations omitted)).

The district court's limiting instruction here may have helped mitigate some of the prejudicial effect of the evidence of Drew's prior convictions.[8]  But the potential prejudice was significant, and it is a tall order to expect the jury to disregard the impermissible propensity-based inferences the evidence invited—particularly since any other probative value it had is unclear.  As a sister circuit has noted, "when the government cannot explain how the prior conviction[s] relate[] to" a material issue "without resorting to a propensity inference, it would be unfair to expect the jury to do so based only on [a limiting] instruction." Miller, 673 F.3d at 702.  In my view, the problems with the prior conviction evidence in this case were not ones a limiting instruction could cure.

Rule 404 strives to create a balance, allowing evidence of a person's prior conduct for some specific purposes while prohibiting parties from using it to "show that on a particular occasion the person acted in accordance with [his] character." Fed. R. Evid. 404(b).  Courts should therefore be attentive to what exactly the government seeks to prove—and what inferences it asks the jury to draw—when it introduces evidence under the rubric of Rule 404(b).  If the government "merely recit[es]" the permissible purposes listed in Rule 404(b), Cotton, 823 F.3d at 434, without establishing *how* the evidence relates to those purposes, it has not met its burden—and the decision to admit that evidence "risk[s] . . . unraveling the prior-

---

[8]I am not convinced, however, that the district court properly instructed the jury on the limited purpose for which it could use the evidence under Rule 404(b). The court's instruction read: "If you find this evidence has been proved, then you may consider it to help you decide in this case the defendant's knowledge of the presence of the firearm . . . and his intent to possess it.  You should give it the weight and the value you believe it is entitled to receive."  Unlike in other cases in which we have held that a limiting instruction mitigated the potential prejudice of prior act evidence, the district court here did not make clear that the evidence could be considered *only* to prove knowledge and intent.  See, e.g., Wright, 866 F.3d at 902, 905; Cotton, 823 F.3d at 435.

acts rule," <u>United States v. Davis</u>, 726 F.3d 434, 444 (3d Cir. 2013).  The problem in this case, as I see it, is that the government is unable to explain how the evidence of Drew's prior convictions proves anything but his general propensity to commit crimes or possess firearms.  This is exactly the sort of evidence prohibited by Rule 404(b).

Ultimately, however, I conclude that the error in admitting the evidence of Drew's prior convictions was harmless.  <u>See</u> <u>United States v. Aldridge</u>, 664 F.3d 705, 714 (8th Cir. 2011) (explaining harmless error standard).  In coming to this conclusion, I do not discount the potentially prejudicial effect of introducing this evidence to the jury.  Rather, I consider the error to be harmless because "the government introduced ample competent evidence from which the jury could conclude beyond a reasonable doubt that the defendant was guilty *even without* the evidence that should have been excluded."  <u>Cotton</u>, 823 F.3d at 435 (emphasis added) (quoting <u>Aldridge</u>, 664 F.3d at 714).  The evidence against Drew included: Smith's testimony that he saw Drew holding the gun and that both Drew and Jefferson were involved in the decision of whether to sell it; Drew's DNA on parts of the gun; and photos of the gun on and taken by Drew's phone from a few days earlier.  And it was this evidence that the government relied on to explain its case in opening and closing arguments.  Though the other evidence against Drew does not undo the effect of the improper admission of his prior convictions, it "is sufficiently strong for [me] to conclude that the convictions . . . did not have a substantial influence on the jury's verdict."  <u>Id.</u> at 435 (cleaned up).  To be clear, I come to this conclusion only after having carefully considered all of the evidence against Drew, and I do not suggest that the admission of improper 404(b) evidence will always or even often constitute harmless error.  Like limiting instructions, harmless error review is not a panacea for the government's introduction of unfairly prejudicial evidence.  And in another case, the outcome may well be different. <u>See, e.g.</u>, <u>Miller</u>, 673 F.3d at 701 (concluding that the erroneous admission of 404(b) evidence was not harmless where the evidence received "prominent play . . . in the government's case"); <u>Brown</u>, 765 F.3d at 295 (concluding that erroneous admission of 404(b) evidence was not harmless where "the Government failed to present anyone who

could put the firearm in [the defendant's] hands and the record did not give the court a "sure conviction" that the jury would have convicted without the 404(b) evidence); United States v. Johnson, 617 F.3d 286, 298 (4th Cir. 2010) (holding that Rule 404(b) error was not harmless "given the overall weakness of the government's case against [the defendant], and the fact that [he] testified in his own defense as well as called numerous witnesses to support his innocence"). But here, the record makes clear that the government did not need to introduce evidence of Drew's prior convictions to convince the jury of his guilt. Accordingly, I concur in affirming his conviction.

---