# United States Court of Appeals
### For the Eighth Circuit
_____

No. 24-1836
_____

United States of America

*Plaintiff - Appellee*

v.

Thomas Lamont Davis, also known as Tuck, also known as Tuc

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: June 9, 2025
Filed: August 25, 2025
_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.
_____

ERICKSON, Circuit Judge.

A jury convicted Thomas Lamont Davis on seven drug trafficking and firearm counts. Before trial, the district court[1] denied Davis's motion to exclude several of his prior Iowa convictions. At sentencing, the district court applied a two-level

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

increase to Davis's base offense level for maintaining a drug premises, and a six-level increase for assaulting one of the arresting officers. On appeal, Davis contends the district court erred when it refused to exclude his prior convictions and when it calculated his Sentencing Guidelines range. We affirm.

## I. BACKGROUND

Davis sold methamphetamine to a confidential source twice in March 2022. A week after the second sale, on April 6, 2022, investigators searched Davis's Des Moines, Iowa, residence pursuant to a search warrant. Davis was absent, but his brother and his brother's girlfriend were at the house. Davis's brother, who lived in an upstairs bedroom next to Davis's, told investigators he had stopped using the basement after moving upstairs but confirmed Davis still used it.

In the basement, investigators found two firearms. One was a .357 magnum Smith & Wesson revolver, with seven rounds of ammunition. The other was a 9-millimeter Beretta pistol, with three rounds of ammunition in its magazine and additional 9-millimeter ammunition in a box. Officers also found baggies and jars with white residue or trace methamphetamine, loose methamphetamine on a table, digital scales, a heat-sealing machine, clean baggies, a money counter, two bundles of cash, and additional drug paraphernalia. Elsewhere in the basement, investigators found a photo album with photographs of Davis and his children. In a freezer, investigators found a jar with 62.3 grams of pure methamphetamine, as confirmed by laboratory testing. Davis's bedroom contained digital scales, marijuana, and a safe with thousands of dollars in cash.

A warrant was issued for Davis's arrest, and in September 2022, Des Moines police officers attempted to stop a white SUV driven by a person matching Davis's description. The SUV driver fled, leading officers on an extended high-speed chase. During their pursuit, Davis's SUV ran several stop signs and lights, drove the wrong way down one-way streets, and made illegal turns. The officers unsuccessfully tried to stop the SUV by spinning it out of control. Eventually, the SUV crashed, and

Davis was surrounded by officers. When he was taken into custody, Davis had in his possession roughly $1,000 in cash. Near the SUV's passenger side, officers found a gray bag containing five plastic baggies of methamphetamine and a digital scale, among other things. A few days later, Davis was released on bond.

In December 2022, officers in Des Moines again attempted to stop a white SUV driven by Davis. Once again, Davis fled to evade the stop. After a chase through residential streets, the SUV crashed into a house. Davis emerged from the vehicle and attempted to flee on foot. When the officers tackled Davis, he began to struggle. During the struggle, Davis tried to swallow a baggie of methamphetamine. When an officer reached inside Davis's mouth to remove the baggie, Davis bit down. The officer hit Davis, and when that was unsuccessful, used an "eye gouge" maneuver to free both his injured finger and the baggie of methamphetamine. The officer's finger was subsequently treated with stitches and transmittable disease testing. Davis was detained, with roughly $1,500 in cash on him. Other officers retrieved a second baggie of methamphetamine near Davis's vehicle, and a bag with a digital scale and unused baggies from the vehicle.

Davis proceeded to trial on two counts of distribution of a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); two counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Davis unsuccessfully moved to exclude from evidence his prior felony convictions in Iowa for controlled substance and firearms offenses. A jury ultimately found Davis guilty on all counts.

At sentencing, the district court sentenced Davis to a 360-month term of imprisonment. Davis raises three issues on appeal: (1) the denial of his motion to

exclude his state convictions; (2) the application of a two-level sentencing enhancement for maintaining a drug premises; and (3) the application of a six-level sentencing enhancement for assaulting an officer who arrested him.

## II. DISCUSSION

### A. *Motion to Exclude*

Davis contends the admission of his Iowa convictions denied him a fair trial and violated Federal Rule of Evidence 404 because they were relevant only to demonstrate his criminal propensity. We review interpretations of the rules of evidence *de novo*, evidentiary rulings for abuse of discretion, and whether an evidentiary ruling violates a constitutional right *de novo*. United States v. Spotted Horse, 916 F.3d 686, 693 (8th Cir. 2019).

The district court allowed into evidence four prior Iowa felonies: a 2000 marijuana possession with intent to deliver conviction, a 2009 firearm possession conviction, a 2010 methamphetamine delivery conviction, and a 2010 firearm possession conviction. These convictions are admissible unless they had no bearing on Davis's case and were introduced solely to prove his propensity to commit criminal acts. United States v. Barbee, 44 F.4th 1152, 1156 (8th Cir. 2022).

When Davis entered a general denial, he put his knowledge of the drugs and guns found in his home—and his intent to possess or distribute them—at issue. See United States v. Smith, 978 F.3d 613, 616 (8th Cir. 2020). Prior convictions are admissible to demonstrate knowledge and intent. Id. (prior felony firearm conviction); United States v. Samuels, 611 F.3d 914, 918 (8th Cir. 2010) (prior felony drug conviction). The district court gave a limiting instruction directing the jury to consider the prior convictions only for knowledge, motive, opportunity, and intent, specifically instructing them that they could not use the past convictions as "evidence that [Davis] committed such an act in this case."

While we have warned about the admission of cumulative prior convictions potentially turning into propensity evidence, the use of cumulative prior convictions may be appropriate when it goes to a permissible purpose like intent or knowledge. United States v. Drew, 9 F.4th 718, 724 (8th Cir. 2021). Neither we nor the Supreme Court have "set a ceiling on the number of past convictions that the government can use to prove intent or knowledge." Id. Typically, so long as the convictions are admitted for a proper purpose and paired with a limiting instruction, a district court does not abuse its discretion when it admits multiple convictions. See id. (six convictions); see also United States v. Aldridge, 664 F.3d 705, 714–15 (8th Cir. 2011) (four convictions, two of which were "merely cumulative"). Because the prior convictions were admitted for a permitted rationale under the rules of evidence, and all were accompanied by a limiting instruction, we find no abuse of discretion. See Drew, 9 F.4th at 724.

## B.    Sentencing Guidelines Enhancements

Davis also challenges two of the sentencing enhancements applied by the district court, which we review *de novo*, including any alleged double counting. United States v. Canamore, 916 F.3d 718, 721 (8th Cir. 2019) (per curiam). We review the district court's factual findings to support an enhancement for clear error. United States v. Hernandez Lopez, 24 F.4th 1205, 1208 (8th Cir. 2022).

Davis first challenges the application of § 2D1.1(b)(12) for knowingly maintaining "a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). Davis asserts the enhancement is inapplicable because he shared his home with others, used it primarily as a residence, and did not use the home solely for the purpose of distributing drugs. While the manufacture or distribution of drugs must be one principal or primary use of the defendant's premises, it need not be the only use of those premises. United States v. Miller, 698 F.3d 699, 706–07 (8th Cir. 2012). See id.; see also United States v. Verners, 53 F.3d 291, 296 (10th Cir. 1995) (defendant exercised control over a house because he "lived there," "had a key," and "came and went as he pleased").

Evidence in the record supports the district court's findings that Davis lived in the home, on two occasions law enforcement observed him distributing drugs from the home, a large amount of cash was found in Davis's bedroom, methamphetamine was stored in the basement of the home where Davis was known to use, and indicia of trafficking was found throughout the house. Because Davis's drug distribution was more than "incidental or collateral" to his use of his home and he did not point to any error in the district court's factual findings supporting the enhancement, § 2D1.1(b)(12) was appropriately applied. See Miller, 698 F.3d at 706–07.

The second challenged enhancement applies if Davis, "in a manner creating a substantial risk of serious bodily injury," assaulted a law enforcement officer "during the course of the offense or immediate flight therefrom." U.S.S.G. § 3A1.2(c)(1); see United States v. Olson, 646 F.3d 569, 573 (8th Cir. 2011) ("[T]he term 'assault' in § 3A1.2(c) is a reference to common-law criminal assault."). Davis contends the enhancement is inapplicable because the officer did not break or lose his finger, nor did he contract a transmittable disease. However, a defendant may create a substantial risk of serious bodily injury even if only minor injuries result from his conduct. See United States v. Davidson, 933 F.3d 912, 914 (8th Cir. 2019) (concluding a defendant who hopped a fence and struggled with officers created a substantial risk of serious bodily injury).

The district court found that the body camera footage captured the officer instructing Davis to let go of his hand as the officer was "clearly in pain and responding to what's happening." The court could hear in the officer's voice on the recording that Davis's actions were causing "extreme physical pain." It noted that the bite did not result in a red mark or bruise but required stitches to correct. While finding the stitches alone were enough to show the officer sustained a serious injury, the court further found "the risk of serious bodily injury beyond what was actually suffered is certainly established as well and the substantial risk of serious bodily injury is present based upon the continued biting of this officer's finger."

Davis has not shown the district court's factual findings are clearly erroneous. Nor has he shown error in the district court's conclusion that when he bit the officer with such force that the officer needed stitches, the officer not only sustained a serious bodily injury, but Davis also created a substantial risk of a more serious injury, particularly when Davis refused commands to let go. The district court did not err when it found § 3A1.2(c)(1) applied to Davis's conduct.

Lastly, Davis contends applying § 3A1.2(c)(1) double counts with a separate enhancement he received under § 3C1.2. The district court applied the obstruction enhancement because Davis twice led officers on reckless vehicle chases. After reviewing evidence presented at trial, the court noted the first incident involved Davis driving the wrong way on streets and running red lights. The second time Davis crashed into a house while speeding away from officers. As explained by the district court, these risks are distinct from the risks created when Davis bit an arresting officer's finger. Davis has not shown the district court clearly erred in its findings relating to the enhancements. Given the separate and distinct conduct, we find no error, clear or otherwise, in the district court's application of enhancements under both § 3A1.2(c)(1) and § 3C1.2. See United States v. Lovato, 868 F.3d 681, 684 (8th Cir. 2017).

## III. CONCLUSION

We affirm the judgment of the district court.

_____