# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-1292

———————————————

United States of America

*Plaintiff - Appellee*

v.

John Sheldon Pickens, Jr.

*Defendant - Appellant*

————————

Appeal from United States District Court
for the District of Minnesota

————————

Submitted: October 21, 2022
Filed: January 25, 2023

————————

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

————————

LOKEN, Circuit Judge.

A jury convicted John Sheldon Pickens, Jr., of possessing at least five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Pickens retained new counsel and moved for judgment of acquittal or a new trial, raising numerous issues. The district court[1] denied the motion. Pickens appeals, raising the

———————————————

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

same issues. His principal argument, raised for the first time in the post-verdict motion, is that law enforcement violated the Fourth Amendment by using expired tracking warrants to locate him when he was arrested returning to the Twin Cities from a trip to Chicago with thirteen pounds of cocaine in his vehicle. The cocaine and other evidence resulting from use of the expired tracking warrants should have been suppressed as fruit of a poisonous tree, Pickens argues, and therefore it was error to deny his motion for acquittal because the government's other evidence was insufficient to convict. Two other claims on appeal -- prosecutorial misconduct and jury instruction error -- presume the alleged invalidity of the tracking warrants. His final argument, ineffective assistance of trial counsel, is not appropriate for review on direct appeal.

We apply the deferential sufficiency-of-the-evidence standard to the denial of a post-verdict motion for judgment of acquittal, and we review the denial of a motion for new trial for abuse of discretion. See, e.g., United States v. Broeker, 27 F.4th 1331, 1335 (8th Cir. 2022) (standards of review). We affirm.

## I.  Background and Procedural History

**A.  Tracking Warrants and Pickens's Trips to Chicago.** On October 5, 2019, St. Paul Patrol Commander Salim Omari suspected that Pickens was involved in a recent murder being investigated. Omari applied for state court warrants to track two cell phones he had reason to believe belonged to Pickens. In supporting affidavits, Omari explained why he believed Pickens might be involved in the murder, averred that Pickens had an outstanding misdemeanor warrant, and explained that "the information in [these] tracking warrant[s] will assist in the ongoing investigation to the whereabouts of Pickens, so he can be located and arrested for his warrant and be interviewed in relation to the murder." The state court issued both warrants for the lesser of (1) a 60-day period starting on October 5, or (2) "the period necessary to achieve the objective of the [warrant] authorization."

-2-

Two days later, St. Paul police arrested Pickens on the outstanding warrant. Officers interviewed Pickens about the murder and obtained a warrant to search three cell phones recovered at the time of his arrest. A search of the phones revealed a photo of Pickens alongside what appeared to be three "bricks" of narcotics. The police released Pickens that day but continued to monitor his location. Tracking data showed that Pickens made a short trip to Chicago on October 11. On the night of October 31, he made a second trip to Chicago, staying only a few hours before driving back to the Twin Cities. Based on this tracking data and the photo, officers suspected that Pickens was transporting narcotics. They decided to conduct an investigatory stop when he arrived in the Twin Cities.

At 9:00 a.m. on the morning of November 1, law enforcement attempted the investigatory stop when Pickens returned to St. Paul, driving a rental car. Pickens pulled to the side of the road, then fled the scene, leading police on a four-minute high-speed chase in which he ran stop signs and red lights and crashed into a house's staircase while maneuvering around a school bus. The chase ended when officers conducted a PIT maneuver. In total, Pickens caused over $21,000 in damage to police vehicles. In searching his vehicle after the chase, officers found six bricks of cocaine under the driver's seat and a middle row of seats. Later that day, they obtained warrants to search the apartment of Ashley Clark, the mother of Pickens's child, and the cell phone in Pickens's possession at the time of his arrest. Officer Jeffrey Schwab averred in his application for the apartment search warrant that officers learned about Pickens's second trip to Chicago when they "continued to receive and monitor phone pings for Pickens's known cell phone" after his October 7 arrest. The apartment search uncovered loaded firearms, ammunition and magazines, marijuana, and $58,000 in cash found in a bedroom along with other items belonging to Pickens. Clark denied the cash and firearms were hers.

**B. Pretrial Motions.** After indictment, Pickens moved to suppress "the fruits that law enforcement attained when they exceed[ed] the scope of a warrant." In a brief filed after the motion hearing, Pickens argued that a hearing under Franks v.

-3-

Delaware, 438 U.S. 154 (1978), was needed because Commander Omari's supporting affidavits for the tracking warrants stated that their purpose was only to locate and arrest Pickens for his misdemeanor warrant and interview him in relation to the murder, whereas officers continued tracking Pickens after his October 7 arrest and interview, meaning that Commander Omari's stated purpose was deliberately or recklessly false or misleading. Pickens argued "there was one initial warrant that was issued, which led to three other additional warrants that were issued . . . [resulting in] illegal information that was obtained." He further argued the November 1 search warrants were not supported by probable cause, were overly broad, and the good-faith exception in United States v. Leon, 468 U.S. 897 (1984), did not apply.

The district court adopted the magistrate judge's[2] Report and Recommendation and denied both motions. It denied a Franks hearing because Pickens failed to show that Commander Omari's statements about the purpose of the tracking warrants were false or misleading at the time that they were made, or even that they were necessary to the issuing court's finding of probable cause. The court agreed with the magistrate judge that the October 5 tracking warrants were supported by probable cause in Omari's detailed supporting affidavits, that there was no evidence of false statements in the affidavits supporting the November 1 warrants, and that the Leon good-faith exception applied to all the warrants.

**C. Trial.** During Pickens's three-day jury trial, the government referenced the October 5 tracking warrants in its case-in-chief. In its opening statement, the government said it would prove Pickens "ran drugs from Chicago to Minnesota" on November 1 "because they were tracking his cell phone. They had . . . a warrant to do that." The government's second witness, Sergeant Scott Schneider, who conducted the PIT maneuver that ended the November 1 police chase, testified that law enforcement located Pickens that morning by "pinging his cell phone." Asked

---

[2]The Honorable Becky R. Thorson, United States Magistrate Judge for the District of Minnesota.

if "law enforcement has to get a warrant to do that," Sergeant Schneider responded, "Yes." After the first day of trial, defense counsel expressed concern the jury might infer the October 5 warrants were "obtained for tracking Mr. Pickens for drug trafficking." The district court responded, "If you think there's some curative instruction later on, it might be that I would consider that."

On the second day, Commander Omari testified that he was monitoring the location of Pickens's phones before the November 1 arrest after the state district court approved his request for "a tracking warrant to get GPS ping locations for Mr. Pickens's phone devices." In closing argument on the third day, the government emphasized that "ping signals" showed Pickens made a short trip to Chicago on October 31. Before jury deliberations, defense counsel requested the curative instruction the district court had invited. The court proposed an instruction that stated in relevant part, "You are instructed that the [tracking] warrant was lawfully obtained in an unrelated investigation." Defense counsel stated he could "live with" that instruction; the court included it in its final instructions.

**D. Post-Trial Motions and Appeal.** In post-verdict motions, new defense counsel argued for the first time that the tracking warrants expired on October 7, after Pickens was released, that continued tracking violated the Fourth Amendment, and therefore all evidence obtained as a result of that tracking, including evidence found in his vehicle on November 1 and in executing the later search warrants, should be suppressed as fruit of a poisonous tree. Relatedly, Pickens argued the government committed misconduct when it failed to correct Sergeant Schneider and Commander Omari's "false testimony regarding the validity of the tracking warrants;" that the curative jury instruction improperly misled the jury to believe officers had a valid warrant to track Pickens's location; and that trial counsel was ineffective for failing to object to evidence about the tracking warrants and to the curative instruction.

The district court denied Pickens's motions. Regarding the primary Fourth Amendment argument, the court concluded that Pickens waived the expired tracking

warrant issue by failing to show good cause for not raising it in a pretrial motion, as Federal Rule of Criminal Procedure 12(b)(3)(C) requires. Alternatively, the court held that Pickens's flight from the police on November 1 provided an independent basis for his arrest and the search of his vehicle. The court rejected Pickens's claim of prosecutorial misconduct because "no witness at trial testified that the warrants were valid." It rejected the jury instruction challenge because, in the context of the entire trial, "the instruction was given to emphasize that the warrant was obtained in an unrelated investigation." Moreover, "any error would have been harmless" given the overwhelming evidence against Pickens. Finally, the court dismissed the ineffective assistance claim without prejudice because "the record has not [yet] been adequately developed on the issue."

## II. Fourth Amendment Issues

Although Pickens filed a pretrial motion to suppress, raising other Fourth Amendment issues, he first argued that the tracking warrants had expired and were therefore invalid in his post-trial motions. Criminal Rule 12(b)(3)(C) requires that a motion to suppress evidence "be raised by pretrial motion if the basis of the motion is then reasonably available and the motion can be determined without a trial on the merits." If a party does not meet the district court's deadline for filing a pretrial motion, it is "untimely" but the court "may consider" the defense or objection "if the party shows good cause." Fed. R. Crim. P. 12(c)(3).

It is undisputed that the Fourth Amendment argument at issue -- whether the government could rely on expired tracking warrants in opposing suppression -- was an issue reasonably available for a pretrial motion to suppress that Pickens did not raise. His initial motion asking for a Franks hearing addressing other tracking warrant issues did not preserve this Fourth Amendment issue. See, e.g., United States v. Green, 691 F.3d 960, 965 (8th Cir. 2012). Thus, his post-verdict suppression motion was untimely under Rule 12. Though he made no attempt to show good cause

for his untimeliness in either the post-trial motions or his briefs to this Court, Pickens argues the issue is reviewable for plain error.

Whether this issue is waived, or whether plain-error review is available, is an unsettled question in our circuit. The pre-2014 version of Criminal Rule 12 expressly provided that a party "waives" a 12(b)(3) argument by failing to show good cause for not raising it in a pretrial motion. Fed. R. Crim. P. 12(e) (2013). We enforced this provision as precluding appellate review. See Green, 691 F.3d at 963-65, applying Davis v. United States, 411 U.S. 233, 242-43 (1973). In 2014, the Advisory Committee removed Rule 12(e)'s reference to "waiver," which can be read as opening the door for plain-error review under Criminal Rule 52(b) and United States v. Olano, 507 U.S. 725, 733-34 (1993). In some recent cases, we have assumed without deciding that plain error view is available. See United States v. Hill, 8 F.4th 757, 760 (8th Cir. 2021); United States v. Bernhardt, 903 F.3d 818, 824 (8th Cir. 2018). In other cases, we have continued to apply the waiver rule without discussing the 2014 amendment. See United States v. LeBeau, 867 F.3d 960, 973 (8th Cir. 2017); United States v. Cooke, 853 F.3d 464, 474 (8th Cir. 2017).

In our view, waiver continues to be the proper answer. If a suppression issue is raised and determined before trial, the trial goes forward with the government introducing whatever evidence is not suppressed. Here, the trial went forward with evidence Pickens now claims should have been suppressed, and the remedy he requests for his untimeliness is an acquittal! In Davis, the Supreme Court rejected plain-error review in an analogous 28 U.S.C. § 2255 context, noting that "[s]trong tactical considerations would [otherwise] militate in favor of delaying the raising of the claim in hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction." 411 U.S. at 241. However, as our prior cases are inconsistent on this issue, we will alternatively review for plain error.

To succeed on plain-error review, Pickens "must show an obvious error that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings." Bernhardt, 903 F.3d at 824 (citing Olano, 507 U.S. at 732). We see nothing here that seriously affected the fairness or integrity of this prosecution. Indeed, we find it hard to imagine a result that is more at odds with "the fairness, integrity, or public reputation of judicial proceedings," Olano, 507 U.S. at 732, than rewarding Pickens with an acquittal or new trial for untimely raising new fact-intensive suppression arguments the government had no opportunity to contest.

In addition, we agree with the district court there was no plain error. Whether the tracking warrants expired when Pickens was arrested, interviewed, and released on October 7 is an issue we do not decide. But it is hardly free from doubt, so any error in not reaching the issue was not plain. Moreover, Pickens fled when the police attempted to stop him on November 1, leading them on a hazardous high-speed chase that provided probable cause to arrest Pickens for resisting arrest, failing to stop after a collision, and reckless driving. See Minn. Stat. §§ 609.487, subd. 3; 169.09, subd. 2; and 169.13, subd. 1(a). Resistance to even an illegal stop or arrest can furnish grounds for a legitimate arrest. United States v. Sledge, 460 F.3d 963, 966 (8th Cir. 2006). Here, there was no stop or arrest before Pickens fled. Finally, Pickens's flight, combined with a lawfully-obtained photo showing him with "bricks" of narcotics, provided at least arguable probable cause to conduct a warrantless search of his vehicle pursuant to the Fourth Amendment "automobile exception." See, e.g., United States v. Mayo, 627 F.3d 709, 713-14 (8th Cir. 2010). For these reasons, we affirm the district court's denial of Pickens's motion for judgment of acquittal or a new trial based on the alleged expiration of the tracking warrants.

### III.  The Prosecutorial Misconduct Issue

Pickens next argues that the government knowingly obtained his conviction through the use of false testimony when Commander Omari testified that the November 1 search warrants were valid when those warrants were based on

information gathered from an expired tracking warrant. "To establish a due process violation based on the prosecutorial use of false testimony, a defendant must show that (1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict." United States v. Bass, 478 F.3d 948, 951 (8th Cir. 2007) (quotation omitted). "To show that [Omari] committed perjury, [Pickens] must show that [Omari] provided false testimony concerning a matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Espinoza, 684 F.3d 766, 780 (8th Cir. 2012) (quotation omitted).

This contention is without merit for multiple reasons. First, as the district court noted, "no witness at trial testified that the warrants were valid." Commander Omari testified that he applied to state court for tracking warrants, the warrants issued, and they were used both to track Pickens's location and as background in obtaining the November 1 search warrants that resulted in seizing additional evidence. Omari and the government's other law enforcement witnesses did not need to address and did not address the validity of the tracking or the November 1 search warrants. Law enforcement is entitled to presume that warrants issued by a neutral magistrate are valid. Nor was Omari questioned about whether the tracking warrants expired when Pickens was released on October 7. Finally, perhaps most importantly, this due process claim requires a showing, completely absent here, of the government's knowing use of *perjured* testimony, testimony offered by a witness with the "willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." Espinoza, 684 F.3d at 780 (quotation omitted).

## IV. The Jury Instruction Issue

Jury Instruction Number 9, the district court's curative instruction addressing the tracking warrants, instructed the jury:

> You have heard testimony about a tracking warrant for the Defendant's cell phone. You are instructed that the warrant was lawfully obtained in an unrelated investigation.

In his post-trial motions, Pickens argued this instruction improperly misled the jury into believing that law enforcement had valid warrants to track him after October 7. The district court rejected this argument on its merits. We agree, but we need not even reach the merits because the instruction's reference to "an unrelated investigation" addressed a concern that Pickens's trial counsel initially raised. Counsel later requested a curative instruction and then agreed he could "live with" the instruction proposed by the district court. When a defendant has "requested an instruction that included the language he now objects to . . . his objection is therefore waived." United States v. DeFoggi, 839 F.3d 701, 713 (8th Cir. 2016); see United States v. Davis, 826 F.3d 1078, 1082 (8th Cir. 2016) ("[T]he doctrine of invited error applies.").

## V. Ineffective Assistance of Trial Counsel

Finally, Pickens argues his trial counsel provided ineffective assistance for mishandling the tracking warrants issues. We review claims of ineffective assistance of trial counsel on direct appeal only in "exceptional cases" where "the relevant factual record has been fully developed, a failure to consider the claim on direct appeal would constitute a plain miscarriage of justice, or the alleged error of trial counsel is readily apparent." United States v. Sanchez-Gonzalez, 643 F.3d 626, 628-29 (8th Cir. 2011) (cleaned up). Here, we agree with the district court that "the record has not been adequately developed on the issue."

## VI. Conclusion

The judgment of the district court is affirmed. We deny as moot appointed counsel's motion to withdraw.

_____