# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2343

_____

United States of America

*Plaintiff - Appellee*

v.

Richard Ladavid Brown, Jr., also known as Richard Lee David Brown, also known as Junior Brown

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: June 16, 2023
Filed: December 13, 2023

_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

_____

KELLY, Circuit Judge.

A jury found Richard Lee David Brown guilty of possession with intent to distribute a controlled substance. See 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 851. Brown appeals his conviction, alleging multiple pre-trial and trial-related errors. We affirm.

At about 5:00 a.m. on November 18, 2020, law enforcement executed a search warrant at an apartment on Clark Street, in Des Moines, Iowa.[1] Brown, Kenny Smart, and Smart's girlfriend, Dionne Dibble, were present when officers arrived. Lisa Harper, the tenant of the apartment, was not.

When officers first entered the apartment, they saw a man—Brown—running towards the kitchen. They secured Brown, and then searched the three-bedroom apartment.

In the first bedroom, officers found Smart, his tablet, a firearm and ammunition, over a thousand dollars of cash belonging to Smart, and Dibble's cell phone. In the third bedroom, law enforcement found drugs—much of which was later determined to be cocaine base—and drug paraphernalia. On the bed were drugs in plastic bags, along with a hat, a jacket, and a cell phone with a blue case. No fingerprints were found on this evidence, although law enforcement later testified that finding identifiable prints on drug packaging is "[v]ery, very rare." In a still shot from a surveillance video taken of the apartment building the day before, Brown was seen wearing a hat and jacket that looked like those found on the bed.

Later that day, Special Agent Brandon West interviewed Brown. Brown told Agent West that he had stayed in the third bedroom the previous night. Brown also described his cell phone and told Agent West his cell phone number, both of which matched the phone found on the bed in the third bedroom. In Brown's pocket, law enforcement found $590 in cash, which they photographed.

Brown was indicted on one count of possession with intent to distribute cocaine base. His first attorney was appointed in late November 2020, and Brown requested—and received—his first continuance soon after his arraignment. Brown's

---

[1]The facts in this section are drawn from the record before us on appeal.

first attorney was permitted to withdraw on February 18, 2021, and his second attorney was appointed that same day. In October 2021, Brown's second attorney twice requested that trial be continued, but the district court[2] denied these requests. Brown's second attorney was allowed to withdraw the following month, and the court granted Brown a continuance "to provide the reasonable time necessary for effective preparation."

On December 1, 2021, Brown's third attorney—who was ultimately Brown's trial counsel—was appointed. He initially represented to the court that he would be ready for trial on January 31, 2022. But on January 3, 2022, he filed a motion to continue trial, explaining that he had not appreciated the amount of discovery or the extent of his client's requests for additional investigation and in-person meetings. The court denied the motion.[3]

Brown's trial began on January 31, 2022. The government called Lometa Welch as one of its witnesses. She testified that she went to the Clark Street apartment on the morning that the search warrant was executed, "not long before" the police arrived, to buy crack cocaine. She said she waited by the front door while Lisa Harper got the crack from Brown. Welch claimed that she knew the crack came from Brown because she heard Harper say his name when Harper went into the bedroom, and Welch recognized Brown's voice in response. The government also introduced evidence of Brown's two previous controlled substance related convictions, as well as evidence related to Smart. The jury heard that Smart was arrested on the day the Clark Street apartment was searched, and that he was charged, tried, and found guilty of possession of a firearm as a felon and use of a firearm in furtherance of a drug crime. The jury also heard that Smart not only sold drugs, but

---

[2]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

[3]Brown's third attorney thereafter sought to withdraw, citing a breakdown in the attorney client relationship, and Brown filed a *pro se* motion requesting the same. After a hearing, the defense withdrew its request.

that he did so out of the Clark Street apartment, where he also cooked cocaine powder into cocaine base (or crack). As relevant on appeal, the government also introduced into evidence the photograph of Brown's cash and the still shot from the surveillance video taken of the apartment building the day before the search that captured Brown wearing the hat and jacket that looked like those found in the third bedroom.

At the conclusion of the government's case, Brown moved for judgment of acquittal, which the court denied. He then asked that a "mere presence" instruction be given to the jury, but the court denied the request. The jury returned a guilty verdict. The district court denied Brown's motion for a new trial, and sentenced him to a 264-month term of imprisonment and 6 years of supervised release. He timely appeals and raises multiple issues.

## II.

As an initial matter, Brown moves to expand the record on appeal and asks us to consider evidence not presented to the district court. But "[a]n appellate court can properly consider only the record and facts before the district court and thus only those papers and exhibits filed in the district court can constitute the record on appeal." United States v. Brewer, 588 F.3d 1165, 1171 n.4 (8th Cir. 2009) (quoting Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc., 528 F.3d 556, 559–60 (8th Cir. 2008)); see Faidley v. United Parcel Serv. of Am., Inc., 889 F.3d 933, 942 n.7 (8th Cir. 2018) (en banc); see also Fed. R. App. P. 10(a) (defining record on appeal).

Because the documents that Brown wants us to consider "were presented for the first time on appeal, 'they are not part of the record for our review,' and we cannot consider them." C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347, 591 F.3d 624, 629 n.4 (8th Cir. 2010) (quoting Bath Junkie, 528 F.3d at 560); see Midwest Fence Corp. v. U.S. Dep't of Transp., 840 F.3d 932, 946 (7th Cir. 2016) ("As a general rule, we will not consider evidence on appeal that was not before the district court when it rendered its decision. Adding new evidence would essentially

convert an appeal into a collateral attack on the district court's decision." (citations omitted)); cf. Fed. R. App. P. 10(e)(2) (allowing errors in, and omissions from, the record to be remedied in limited circumstances not present here). Consequently, we deny Brown's Amended Motion to Expand the Record on Appeal and we examine his arguments based on the record that was before the district court.

## III.

Brown argues that the government improperly introduced statements in which he described his cell phone and provided his cell phone number to Agent West. He asserts that their introduction was improper because he made these statements during a custodial interrogation before he received any Miranda warning.

"[A] motion to suppress evidence [must] 'be raised by pretrial motion if the basis [for] the motion is then reasonably available and the motion can be determined without a trial on the merits.'" United States v. Pickens, 58 F.4th 983, 987 (8th Cir. 2023) (quoting Fed. R. Crim. P. 12(b)(3)(C)) (considering issue in Fourth Amendment context). When a party fails to show good cause for not raising suppression in a pretrial motion, "[w]hether this issue is waived, or whether plain-error review is available, is an unsettled question in our circuit." Id. at 988 (expressing the view that waiver is "the proper answer," but nonetheless reviewing suppression argument not raised to district court for plain error); see United States v. Thornton, No. 22-2790, 2023 WL 4994508, at *2 (8th Cir. Aug. 4, 2023) (per curiam) (unpublished) (reviewing defendant's argument to suppress evidence "under a plain-error standard," when the argument was neither "raised by pretrial motion, nor raised at all to the district court").

Brown's argument that his pre-Miranda statements should be suppressed was not raised to the district court, and he has not offered good cause for his failure to do so. Assuming without deciding that plain error review is available to Brown, we review for plain error. See Pickens, 58 F.4th at 988 (first citing United States v. Hill, 8 F.4th 757, 760 (8th Cir. 2021) (per curiam); and then citing United States v.

-5-

Bernhardt, 903 F.3d 818, 824 (8th Cir. 2018)). "To obtain relief . . . [Brown] must show an obvious error that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings." Bernhardt, 903 F.3d at 824–25 (citing United States v. Olano, 507 U.S. 725, 732 (1993)).

Our review of this issue is confined to the record before us on appeal, and Brown's argument relies on information outside that record. The evidence at trial— and before us now—included testimony that soon after the officers entered the Clark Street apartment, Brown was handcuffed. The record does not indicate when Brown was given a Miranda warning or whether the Miranda warning was given before or after the now-challenged statements were made. Because we can "properly consider only the record and facts before the district court," Brewer, 588 F.3d at 1171 n.4 (citation omitted), we cannot conclude the district court plainly erred in allowing the statements into evidence.

IV.

Brown argues that, at trial, the government offered and relied on Lometa Welch's uncorrected false testimony, in violation of his Due Process rights. Because he did not raise this issue at trial, we review for plain error. See United States v. Hill, 31 F.4th 1076, 1082–84 (8th Cir. 2022), cert. denied, 143 S. Ct. 1036 (2023).

Welch testified that she interacted with Lisa Harper at the Clark Street apartment on the morning it was searched. Brown contends that this testimony is false because, he claims, "Harper was not present at the residence that morning." The evidence supports the assertion that Harper was not at the apartment when the officers executed the search warrant. But no evidence in the record supports the assertion that Harper was not present at the apartment earlier that morning—before the search warrant was executed. On this record, Brown has failed to show any error that was plain.

-6-

## V.

Next, Brown challenges four of the district court's evidentiary rulings. First, its admission of two of Brown's prior state convictions under Federal Rule of Evidence 404(b): a 2014 conviction for possession of a controlled substance (cocaine base) with intent to deliver, and a 2019 conviction for possession of cocaine. Second, its exclusion of "reverse" 404(b) evidence about Smart. Third, its admission of an exhibit showing money that had been returned to Brown before trial. And fourth, its admission of Agent West's testimony about the lack of fingerprints found on contraband seized from the apartment.

### A.

For evidence to be admissible under Rule 404(b) it must:

> be (1) relevant to a material issue raised at trial, (2) similar in kind and close in time to the crime charged, (3) supported by sufficient evidence to support a jury finding the defendant committed the other act, and (4) of probative value not substantially outweighed by its prejudicial effect.

United States v. LeBeau, 867 F.3d 960, 978–79 (8th Cir. 2017) (quoting United States v. Halk, 634 F.3d 482, 486–87 (8th Cir. 2011)). "We review the admission of evidence under Rule 404(b) for abuse of discretion." United States v. Jones, 74 F.4th 941, 949 (8th Cir. 2023) (quoting United States v. Riepe, 858 F.3d 552, 559 (8th Cir. 2017)). We "revers[e] only when the evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Abarca, 61 F.4th 578, 581 (8th Cir. 2023) (quoting United States v. DNRB, Inc., 895 F.3d 1063, 1068 (8th Cir. 2018)).

Here, the government's proposed uses of Brown's prior convictions to prove knowledge, motive, and intent "were not well-explained, and might prudently have been omitted." United States v. Monds, 945 F.3d 1049, 1052 (8th Cir. 2019). But they were relevant to his "state of mind," and to the elements of the charge brought

against him. Jones, 74 F.4th at 950 (quoting United States v. Davis, 867 F.3d 1021, 1029 (8th Cir. 2017)). The convictions "thus had some 'bearing on the case,' and w[ere] not used 'solely to prove' his 'propensity to commit criminal acts.'" Abarca, 61 F.4th at 581 (quoting DNRB, 895 F.3d at 1068). Moreover, the district court's decision to provide a cautionary instruction before the 404(b) evidence was introduced, as well as a final instruction to the same effect, lessened any unduly prejudicial effect of the convictions. Cf. Monds, 945 F.3d at 1053 (discussing cautionary instruction). The district court did not abuse its discretion.

*B.*

The "reverse" 404(b) evidence relates to Kenny Smart, who was present at the Clark Street apartment on the morning of the search. "[R]everse" 404(b) evidence "refer[s] to evidence of prior bad acts by a third party, introduced by the defendant and offered to implicate the third party in the charged crime." United States v. Battle, 774 F.3d 504, 512 & n.2 (8th Cir. 2014) (citing cases from the Fourth, Tenth, Seventh, Sixth, Fifth, Ninth, and Third Circuits). Before trial, the district court ruled that evidence pertaining to Smart that was related to the search at Clark Street was admissible, but that it would exclude evidence of Smart's prior convictions. Because Brown objected to the exclusion of the "reverse" 404(b) evidence, we review the district court's decision for abuse of discretion. See Jones, 74 F.4th at 949. We "will 'revers[e] only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict.'" United States v. Vaca, 38 F.4th 718, 720 (8th Cir. 2022) (quoting United States v. Anderson, 783 F.3d 727, 745 (8th Cir. 2015)).

Here, we need not decide the propriety of the evidentiary ruling because there is no indication that the exclusion of the "reverse" 404(b) evidence had more than a slight influence on the verdict. Brown asserts that this exclusion prevented him from raising questions about who in fact possessed the drugs found on the bed during the search. As a result, he argues, he could not "sow doubt into the case against [him]." But the record says otherwise. Smart did not testify at trial, but Brown was able to

offer ample details about Smart and use that information to "sow doubt" as to who possessed the drugs. Given the information about Smart that Brown put before the jury, the exclusion of the "reverse" 404(b) evidence could have had no more than "a slight influence on the verdict."

## C.

Next, Brown argues that a photograph of $590 in cash that was found in Brown's front pocket on the day of the search was improperly admitted. Because Brown raises this issue for the first time on appeal, we review for plain error. United States v. Torrez, 925 F.3d 391, 395 (8th Cir. 2019) (citing United States v. Lee, 374 F.3d 637, 649 (8th Cir. 2004)). Brown asserts that because this money was returned to him before trial, the introduction of a photo of the cash at trial was unfairly prejudicial. But Brown points to nothing in the record to support the assertion that this cash was, in fact, returned to him. Even assuming it was, he does not explain why the photo of the cash should be considered "impermissible . . . 404(b) evidence," as he asserts it to be. This rule of evidence limits the use of any "*other* crime, wrong, or act." Fed. R. Evid. 404(b)(1) (emphasis added). Yet the drugs found in the third bedroom and the money found in Brown's pocket were both seized on the day the Clark Street apartment was searched. Brown has not explained how the challenged evidence is evidence of any "crime, wrong, or act" that is separate from the acts forming the basis for the charge against him. The district court did not plainly err in admitting the exhibit.

## D.

Brown argues that Agent West should not have been permitted to testify that it was "[v]ery, very rare" to find identifiable prints on drug packaging. This evidence, Brown argues, "goes into the territory of expert witness." Because Brown did not object to this testimony, we review for plain error. See United States v. Yarrington, 634 F.3d 440, 447 (8th Cir. 2011) ("To preserve an argument that evidence was improperly *admitted,* the party must have made specific objections

-9-

before the district court." (first citing United States v. Johnson, 450 F.3d 366, 371 n.2 (8th Cir. 2006); and then citing Fed. R. Evid. 103(a)(1))); United States v. Martin, 869 F.2d 1118, 1121–22 (8th Cir. 1989) (applying same standard in context of expert testimony).

Even if the contested statement qualified as expert testimony, see Daubert v. Merrell Dow. Pharms., Inc., 509 U.S. 579, 592–95 (1993); Fed. R. Evid. 702, any error in its admission did not affect Brown's substantial rights. Contrary to Brown's conclusory argument that Agent West's statement "prevent[ed] the jury from a full opportunity to fairly assess the *actual* evidence against [him]," the jury had ample opportunity to assess the evidence presented at trial, including the fact that the forensics lab was unable to locate or develop any identifiable fingerprints on this evidence. There was no plain error.

VI.

Brown asserts the district court erred in denying his request for a "mere-presence" instruction. We review for abuse of discretion. United States v. Franklin, 960 F.3d 1070, 1072 (8th Cir. 2020) (citing United States v. Solis, 915 F.3d 1172, 1178 (8th Cir. 2019) (per curiam)). "When reviewing jury instructions, we ensure that the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." United States v. Glinn, 863 F.3d 985, 988 (8th Cir. 2017) (citing United States v. Merrell, 842 F.3d 577, 583 (8th Cir. 2016)). "A defendant is not entitled to a particularly worded instruction on his theory of defense, but he should be given an avenue to present his contention." United States v. Drew, 9 F.4th 718, 725 (8th Cir. 2021) (quoting Franklin, 960 F.3d at 1072).

As the district court noted, the instructions, when taken together, allowed Brown "the opportunity to argue [] what he [wa]s requesting to argue": that he did not knowingly possess the drugs and his mere presence was insufficient to support conviction. "[T]he 'unmistakable implication'" of Instruction 13, which addressed constructive possession, was "that something more than mere presence was required

in order to convict." Franklin, 960 F.3d at 1072 (quoting United States v. Vore, 743 F.3d 1175, 1182 (8th Cir. 2014)); Drew, 9 F.4th at 725 (noting proposed mere-presence instruction would have been duplicative of interlocking constructive- and joint-possession definitions). And Final Instruction No. 10 required the government to prove that Brown knowingly possessed a controlled substance and intended to distribute some or all of it. Taken as a whole, the final instructions adequately conveyed that more than mere presence was required to convict Brown. See Drew, 9 F.4th at 725; Franklin, 960 F.3d at 1072; United States v. Claxton, 276 F.3d 420, 424 (8th Cir. 2002) (noting "the district court might well have given the mere-presence portion of the requested instruction," but based on the circumstances of that case, did not abuse its discretion in declining to do so).

## VII.

Brown argues that he was denied a fair trial when the district court denied his January 3, 2022, motion to continue the trial. "We review the denial of the motion for a continuance for a prejudicial abuse of [the district court's broad] discretion." United States v. Woods, 978 F.3d 554, 567 (8th Cir. 2020) (citation omitted); United States v. Chahia, 544 F.3d 890, 896 (8th Cir. 2008) (recognizing "a 'district court's discretion is at its zenith when the issue [of a continuance] is raised close to the trial date'" (quoting United States v. Whitehead, 487 F.3d 1068, 1071 (8th Cir. 2007))). But we will only reverse if an abuse of discretion occurred "*and* the moving party was prejudiced as a result." See Chahia, 544 F.3d at 896 (quoting United States v. Wilcox, 487 F.3d 1163, 1172 (8th Cir. 2007)).

Brown's argument in support of prejudice is twofold. First, he asserts that "multiple theories of defenses were not explored (including securing the testimony of Ms. Dionne Dibble)." But in the motion to continue, Brown did not mention Dibble or any other witnesses or theories that the defense needed time to pursue. Thus, any speculation now as to what Dibble's testimony would have added to Brown's defense is "insufficient to demonstrate prejudice." Chahia, 544 F.3d at 897 (citations omitted); see United States v. Howard, 540 F.3d 905, 906–07 (8th Cir.

2008) (determining district court did not err in denying defendant's motion for continuance because "[s]peculation is inadequate to establish prejudice"). Moreover, Brown has failed to explain these unexplored defense theories or how a continuance would have allowed him to develop them.

Second, Brown argues that prejudice is "illustrate[d]" by "any issues" that this court finds were unpreserved. This argument is wholly conclusory, failing to "meaningfully argue" how a continuance would have allowed him to preserve any of these issues. See United States v. Williams, 39 F.4th 1034, 1045 n.3 (8th Cir. 2022) (citing Ahlberg v. Chrysler Corp., 481 F.3d 630, 634 (8th Cir. 2007) ("[P]oints not meaningfully argued in an opening brief are waived.")).

Without more, Brown has failed to show that the denial of his motion to continue resulted in prejudice. See Woods, 978 F.3d at 568.

VIII.

Brown appeals the denial of his motion for judgment of acquittal, which we review de novo. United States v. Broeker, 27 F.4th 1331, 1335 (8th Cir. 2022). "[W]e 'view[] the entire record in the light most favorable to the government, resolv[ing] all evidentiary conflicts accordingly, and accept[ing] all reasonable inferences supporting the jury's verdict.'" Id. (quoting United States v. Aungie, 4 F.4th 638, 643 (8th Cir. 2021)). "We will reverse a district court's denial of a motion for acquittal only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." Id. (cleaned up).

"To convict a defendant of possession with intent to distribute a controlled substance, the government must prove beyond a reasonable doubt that the defendant 'both knowingly possessed and intended to distribute the drugs.'" United States v. Campbell, 986 F.3d 782, 807 (8th Cir. 2021) (quoting United States v. Morales, 813 F.3d 1058, 1065 (8th Cir. 2016)). On appeal, Brown's argument for reversal is

cursory. It does not convince us that we should displace the role of the jury. See United States v. Hollingshed, 940 F.3d 410, 417 (8th Cir. 2019). And, reviewing the record, we are convinced that there was sufficient evidence from which a reasonable jury could find each element of the offense beyond a reasonable doubt.

IX.

Brown also argues that the district court abused its discretion in denying his motion for a new trial. "[T]he key question [is] whether a new trial is necessary to prevent a miscarriage of justice." Manning v. Jones, 875 F.3d 408, 410 (8th Cir. 2017) (citing Dindinger v. Allsteel, Inc., 853 F.3d 414, 421 (8th Cir. 2017)); see Broeker, 27 F.4th at 1335 (stating abuse of discretion as standard of review).

 "Federal Rule of Criminal Procedure 33(a) provides that a district court 'may vacate any judgment and grant a new trial if the interest of justice so requires.'" Broeker, 27 F.4th at 1335. But such Rule 33 motions are "disfavored," and we have instructed district courts to exercise "Rule 33 authority sparingly and with caution." Id. (citations omitted). Indeed, new trials are "reserved for exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Stacks, 821 F.3d 1038, 1045 (8th Cir. 2016) (quoting United States v. Knight, 800 F.3d 491, 504 (8th Cir. 2015)). This case does not present us with that exceptional circumstance.

At the district court, Brown argued he was entitled to a new trial based on the failure to instruct the jury on "mere-presence" and the 404(b) rulings. We have already examined these issues. To the extent Brown raises other alleged errors, these were not presented to the district court. In any event, we have addressed these arguments as well. Based on the record before us, the evidence does not weigh so heavily against the verdict such that a miscarriage of justice may have occurred, and consequently "[t]he jury's verdict must be allowed to stand." United States v. Sturdivant, 513 F.3d 795, 802 (8th Cir. 2008) (quoting United States v. Johnson, 474 F.3d 1044, 1051 (8th Cir. 2007)).

X.

Brown asserts that his trial counsel provided ineffective assistance. "We normally defer ineffective-assistance claims to 28 U.S.C. § 2255 proceedings." United States v. Oliver, 950 F.3d 556, 566 (8th Cir. 2020) (citing United States v. McAdory, 501 F.3d 868, 872–73 (8th Cir. 2007)) "There may be cases in which trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal." Massaro v. United States, 538 U.S. 500, 508 (2003). But this is not such a case.

First, the evidence underlying Brown's ineffective assistance claim is not sufficiently developed to allow direct appeal review. See Oliver, 950 F.3d at 566 ("A developed record in the ineffective-assistance context requires that 'the district court . . . created a record on the specific issue of ineffective assistance.'" (quoting United States v. Wilder, 597 F.3d 936, 944 (8th Cir. 2010))). Second, Brown's ineffective assistance arguments ask this court to evaluate, *inter alia*, trial counsel's strategic decisions both before and during trial. Brown's "claims, complex and intertwined with trial strategy, are best left for a 28 U.S.C. § 2255 proceeding." United States v. Thompson, 690 F.3d 977, 993 (8th Cir. 2012). "For these reasons, this is not one of the 'exceptional cases' in which an ineffective-assistance claim is ripe for review on direct appeal." Oliver, 950 F.3d at 567 (quoting United States v. Sanchez-Gonzalez, 643 F.3d 626, 628 (8th Cir. 2011)).

XI.

Finally, Brown argues for reversal based on the cumulative effect of his asserted errors. Where none of a defendant's "claimed errors is itself sufficient to require reversal," we may reverse "where the case as a whole presents an image of unfairness that has resulted in the deprivation of a defendant's constitutional rights." United States v. Riddle, 193 F.3d 995, 998 (8th Cir. 1999) (citing United States v. Steffen, 641 F.2d 591, 598 (8th Cir. 1981)); see United States v. Tyerman, 701 F.3d

-14-

552, 565 (8th Cir. 2012). Based on the record before us, such relief is not appropriate here.

XII.

We affirm the judgment of the district court.

GRUENDER, Circuit Judge, concurring in part and concurring in the judgment.

In Part III, *ante* at 5-6, the court addresses Brown's argument that the Government improperly introduced statements that he made during a custodial interrogation before he received a *Miranda* warning. Brown did not file a pretrial motion to suppress these statements. The court assumes without deciding that we nevertheless may review for plain error Brown's suppression arguments first raised on appeal. Respectfully, I would not make the same assumption.

Suppression issues must "be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(C). If a defendant fails to make a timely suppression motion, a court may consider the matter "if the party shows good cause." Fed. R. Crim. P. 12(c)(3). In this case, it is undisputed that the basis for the suppression argument Brown raises on appeal was reasonably available pretrial. Brown also does not attempt to show good cause for failing properly to raise the issue in the district court.

Before the 2014 amendment to Rule 12, we would have deemed Brown's suppression arguments waived and refused to consider them. *See, e.g.*, *United States v. Green*, 691 F.3d 960, 963-65 (8th Cir. 2012). This was, in part, because the pre-amendment version of Rule 12 expressly stated that a party waives an untimely Rule 12(b)(3) argument absent good cause. The 2014 amendment removed this reference to waiver. Since then, our cases have grappled with whether unpreserved suppression issues are waived or whether we might review them for plain error. *See,*

*e.g.*, *United States v. Hill*, 8 F.4th 757, 760 (8th Cir. 2021) (assuming without deciding the availability of plain-error review).

The matter remained unresolved until our decision in *United States v. Pickens*, 58 F.4th 983 (8th Cir. 2023). In *Pickens*, we surveyed the history described above, noted that the issue was "unsettled," and then decided the question. *Id.* at 987-89. We held that, after the amendment to Rule 12, "waiver continues to be the proper answer." *Id.* at 988. We reasoned that applying the waiver rule prevents undesirable trial gamesmanship: "If a suppression issue is raised and determined before trial, the trial goes forward with the government introducing whatever evidence is not suppressed. Here, the trial went forward with evidence Pickens now claims should have been suppressed, and the remedy he requests for his untimeliness is an acquittal!" *Id.*; *see also Davis v. United States*, 411 U.S. 233, 241 (1973).

The court wrongly discounts *Pickens*'s resolution of the issue. *See ante* at 5 (characterizing *Pickens* as merely "expressing [a] view"). The views of prior panels bind us. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel."). I would follow that cardinal rule here. It is true that, after reaching the conclusion that Pickens's arguments were waived, we "alternatively review[ed] for plain error" due to our prior cases' "inconsisten[cy]." *Pickens*, 58 F.4th at 988. But the fact that *Pickens* conducted plain-error review in the alternative does not render its holding on the waiver issue any less binding. *See Massachusetts v. United States*, 333 U.S. 611, 623 (1948) (explaining that where a decision "rested as much upon the one determination as the other . . . the adjudication is effective for both"); *United States v. Files*, 63 F.4th 920, 926 (11th Cir. 2023) ("[A]lternative holdings are as binding as solitary holdings." (internal quotation marks omitted)).

Beyond its binding effect, *Pickens*'s reasoning was sound. The Advisory Committee made clear that removal of the term "waiver" did not render untimely suppression motions subject to plain-error review. *See United States v. Vance*, 893 F.3d 763, 769 n.5 (10th Cir. 2018). Instead, the Advisory Committee's stated

purpose was to clarify that, "[a]lthough the term waiver in the context of a criminal case ordinarily refers to the intentional relinquishment of a known right," Rule 12 "has never required any determination that a party who failed to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely fashion." Advisory Committee's Notes on 2014 Amendments to Fed. R. Crim. P. 12.

Reviewing unpreserved suppression issues for plain error would make little sense, as this case demonstrates. Without a timely motion, the record will rarely be developed enough for even plain-error review. Here, for example, the court concludes that the district court did not plainly error in allowing the introduction of the challenged statements because the "record does not indicate when Brown was given a *Miranda* warning or whether the *Miranda* warning was given before or after the now-challenged statements were made." *Ante* at 6. I would not engage in the vacuous enterprise of reviewing a nonexistent record for plain error.

In sum, *Pickens* dictates that Brown waived his suppression arguments. Because Part III of the court's opinion does not treat *Pickens* at controlling, I do not join it. I concur in the remainder of the court's opinion and in the judgment.

_____