# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2211
_____

United States of America

*Plaintiff - Appellee*

v.

Ledra A. Craig, also known as Volley

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 9, 2024
Filed: March 1, 2024

_____

Before SMITH, Chief Judge, GRUENDER and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Ledra Craig was convicted by a jury of (1) one count of conspiracy to distribute fentanyl, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), (2) one count of distribution of fentanyl, in violation of § 841(a)(1) and (b)(1)(C), (3) two counts of distribution of fentanyl resulting in serious bodily injury, in violation of § 841(a)(1) and (b)(1)(C), and (4) one count of distribution of fentanyl resulting in

death, in violation of § 841(a)(1) and (b)(1)(C). The district court[1] sentenced him to 420 months' imprisonment and 3 years of supervised release. He now appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On August 2, 2020, Craig approached two men, R.P. and N.B., at a casino in St. Charles, Missouri and offered to sell R.P. cocaine. Afterward, Craig entered the restroom with another man, L.T., and the two remained there for about five minutes. Shortly after, casino employees found L.T. alone and unconscious on the floor, and they rendered emergency aid. L.T. eventually recovered, and a toxicology report later revealed fentanyl in his bloodstream. Meanwhile, Craig met with R.P. in the casino's parking garage at the vehicle of another man named Brian Walker. From Walker's car, Craig sold R.P. fentanyl, which R.P. believed was cocaine. R.P. was then joined by N.B., and the two left the casino. R.P. and N.B. were found unconscious a few hours later in N.B's car, which had rolled to a stop in front of a residence. N.B. was revived, but R.P. ultimately died. Officers were able to locate Walker after identifying his vehicle through the casino's surveillance footage, and Walker helped arrange a controlled buy from Craig to an undercover officer. Following the controlled buy, Craig was arrested. At the police station, he made a statement to officers after waiving his Miranda[2] rights, but the statement was not recorded. He later consented to a search of his home, which revealed more fentanyl. He was taken back to the police station and made another statement, which officers recorded.

Craig was indicted on several fentanyl-related charges—conspiracy to distribute, distribution resulting in serious bodily injury, and distribution resulting in death. Before trial, Craig moved to suppress his statement to officers, alleging police

---

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

misconduct rendered both his <u>Miranda</u> waiver and consent to search his home invalid. After an evidentiary hearing, the magistrate judge[3] issued a report and recommendation that Craig's motion to suppress be denied, finding that Craig had voluntarily waived his <u>Miranda</u> rights. The district court adopted the report and recommendation in full and denied Craig's motion. The Government subsequently filed a motion in limine seeking to prohibit Craig from alleging that police engaged in misconduct in obtaining Craig's post-arrest statements. The district court granted the Government's motion.

At trial, and over Craig's objection, the district court admitted several text messages sent on July 10 and 11, 2020 between Craig and an unidentified coconspirator nicknamed "Glenn." The exchange indicated that Craig sought to buy drugs from "Glenn," and the two discussed quantity and price. The district court also admitted evidence of Craig's prior drug conviction. At the end of the Government's case, Craig moved for a judgment of acquittal, which the district court denied. Craig was ultimately convicted and sentenced shortly thereafter.[4]

---

[3]The Honorable Patricia L. Cohen, United States Magistrate Judge for the Eastern District of Missouri.

[4]We note that while Craig filed a motion for a new trial, we found no order from the district court ruling on the motion. Nonetheless, because the district court sentenced Craig and therefore issued a final judgment inconsistent with a grant of a new trial, we consider this an implicit denial of the motion and proceed to the merits of Craig's argument on appeal. <u>See</u> <u>United States v. Claxton</u>, 766 F.3d 280, 291 (3d Cir. 2014) (considering an appeal's merits despite the district court's failure to conditionally rule on defendant's new trial motion because the entry of judgment and commitment order constituted an implicit denial of the motion); <u>United States v. Jasso</u>, 634 F.3d 305, 307 n.2 (5th Cir. 2011) (finding a district court's entry of a final judgment as an implicit denial of a motion for reconsideration); <u>Norman v. Apache Corp.</u>, 19 F.3d 1017, 1021 (5th Cir. 1994) ("The denial of a motion by the district court, although not formally expressed, may be *implied* by the entry of a final judgment or of an order inconsistent with the granting of the relief sought by the motion.").

In this appeal, Craig alleges that the text messages between him and "Glenn" were erroneously admitted under Federal Rule of Evidence 801(d)(2)(E); second, he alleges that the district court improperly denied him the right to present a complete defense by contextualizing his inculpatory statement to police; and finally, he alleges that evidence of his prior conviction was erroneously admitted under Federal Rule of Evidence 404(b).[5]

## II.

We turn first to the admission of the text messages between Craig and "Glenn." Federal Rule of Evidence 801(d)(2)(E) provides that an out-of-court statement made by a coconspirator "is admissible if the trial court determines by a preponderance of the evidence that 'the statement was made during the course and in furtherance of a conspiracy to which the declarant and the defendant were parties.'" United States v. Engler, 521 F.3d 965, 972 (8th Cir. 2008) (citation omitted). We outlined in United States v. Bell, 573 F.2d 1040, 1044 (8th Cir. 1978), the procedure a district court should implement when a defendant objects to the admission of a coconspirator statement under Rule 801(d)(2)(E). A district court "may conditionally admit the hearsay statements of alleged co-conspirators, subject to a final ruling on the record that the statements are admissible pursuant to the co-conspirator exception to the hearsay rule." United States v. McCracken, 110 F.3d 535, 542 (8th Cir. 1997) (referencing Bell). In McCracken, though, we explained that:

> The procedures outlined in Bell are flexible and do not require reversal for failure to follow those procedures absent a showing of prejudice. If the record indicates that a defendant failed to specifically request a Bell ruling, but made a motion for acquittal, we will consider the district

---

[5]While Craig attempts to characterize these three evidentiary rulings as a violation of his due process rights, he makes no effort to articulate his rationale and so we do not consider the argument. United States v. Ruzicka, 988 F.3d 997, 1006 (8th Cir. 2021) ("We do not consider claims that a party fails 'meaningfully [to] develop or argue' on appeal." (alteration in original) (citation omitted)).

> judge's denial of the acquittal motion as substantial compliance with the <u>Bell</u> holdings, and employ a plain-error standard of review.

<u>Id.</u> (citation omitted). Craig's trial played out similarly. Craig objected to the admission of the text messages with "Glenn," but he did not specifically invoke <u>Bell</u>. Because he later moved for acquittal, which the district court denied, the district court substantially complied with <u>Bell</u>, and we review the admission of the text messages for plain error.

Under plain error review, Craig bears the burden of showing that the admission of the text messages was not only a plain error but also that it affected his substantial rights. <u>See</u> <u>United States v. Oaks</u>, 606 F.3d 530, 537 (8th Cir. 2010). Craig cannot meet his burden, though, where "overwhelming evidence of the existence of a conspiracy exists and the relevant statements were made in furtherance of that conspiracy." <u>Engler</u>, 521 F.3d at 973. "We interpret the phrase 'in furtherance of' broadly." <u>United States v. Jordan</u>, 260 F.3d 930, 933 (8th Cir. 2001) (explaining that statements identifying a coconspirator's source for drugs have been held to be in furtherance of the conspiracy); <u>United States v. Mayfield</u>, 909 F.3d 956, 961 (8th Cir. 2018) ("[S]tatements that discuss[ed] the supply source for the illegal drugs . . . are considered statements made in furtherance of the conspiracy." (second alteration in original) (citation omitted)). Moreover, while the district court may consider the content of the text messages, the Government must also provide independent evidence—even circumstantial—of the conspiracy's existence. <u>United States v. Ramirez-Martinez</u>, 6 F.4th 859, 867 (8th Cir. 2021); <u>Engler</u>, 521 F.3d at 973 (explaining that "the very content of the text messages establishes by a preponderance of the evidence that the sender was a coconspirator" where the sender instructed the defendant to "'clean' and 'flush' because the 'cops [are] outside'" (alteration in original)).

Craig asserts that there was insufficient evidence that he and "Glenn" were coconspirators and that the text messages did not further any conspiracy in this case

because they were sent on July 10 and 11, three weeks before the casino drug sales took place. We disagree.

In Craig's statement to police, he admitted that he sourced his fentanyl from "Glenn" and that he was the middleman for multiple deals with "Glenn" in the month before the drug deals at issue in this case. Further, the content of the text messages between Craig and "Glenn" corroborates this relationship, as they identify "Glenn" as Craig's drug source and establish that Craig was attempting to buy drugs from him. Craig sent "Glenn" a text message that he "need[ed] some ice." "Glenn" replied, "I'm trying to get some right now how much I [sic] want." Craig responded that he wanted "[a] solid gram" and later sent a text message stating, "Bring me some of that shit glenn," reiterating that he wanted a gram. Craig's argument about the temporal proximity between the text messages and the casino drug sales is equally unavailing. The conspiracy, as charged in the indictment, existed from July 2, 2020 to August 2, 2020, putting the dates of the text messages squarely within the timeframe of the conspiracy. Overall, given that the text messages and Craig's own statement to police established "Glenn" as Craig's drug source, and given that Craig admitted his role as middleman between "Glenn" and his buyers, there was sufficient evidence to establish, by a preponderance of the evidence, the conspiracy's existence and that the statements in the text messages were made in furtherance of the conspiracy.

Craig briefly suggests—without fully developing an argument—that the admission of these text messages "denied his right to Confrontation." To the extent that he is alleging that his rights under the Confrontation Clause were violated because he could not cross-examine "Glenn," the argument is without merit. We have previously explained that coconspirator statements are nontestimonial, and "the Confrontation Clause does not give the defendant the right to cross-examine a person who does not testify at trial and whose statements are introduced under the co-conspirator hearsay exclusion." United States v. Reyes, 362 F.3d 536, 540-41 (8th Cir. 2004). We therefore see no error in the district court's admission of text messages between Craig and "Glenn."

III.

Craig next alleges that the district court abused its discretion by preventing him from eliciting testimony of police misconduct when Drug Enforcement Administration Officer Daniel Plumb and another local police detective obtained Craig's inculpatory statement. Specifically, he sought to question Officer Plumb about whether it would violate DEA policy to record statements on his phone, but the district court sustained the Government's objection to the question. Craig argues that we should review this evidentiary ruling for an abuse of discretion, but he also maintains that the ruling prevented him from presenting a complete defense, thus violating his due process rights. "We review evidentiary rulings for an abuse of discretion, but our review is de novo when the challenge implicates a constitutional right." United States v. West, 829 F.3d 1013, 1017 (8th Cir. 2016). However, "[e]ven where an evidentiary ruling . . . violates a constitutional proscription, . . . we will not reverse unless the error is more than harmless in that it affected a substantial right or had more than a slight influence on the verdict." Id.

As a threshold matter, "[t]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (citation omitted). While this "includes the right to present certain evidence concerning a confession, . . . '[o]nce the court makes a preliminary determination that the confession is voluntary, then the only requirement is that the defendant be allowed to place the statements in context.'" United States v. Martin, 369 F.3d 1046, 1058 (8th Cir. 2004) (second alteration in original) (citation omitted). Because the district court found that Craig's statement was voluntarily made when it denied his motion to suppress, he was only entitled to contextualize his statement to police.

Craig asserts that the district court prohibited him from contextualizing his statements to police, thus denying him the right to present a complete defense. We disagree. At trial, Craig's attorney asked the district court for guidance as to what types of questions constituted inferences of police misconduct versus questions that

merely proved the circumstances surrounding Craig's statements. The district court refused to provide any guidance, instead explaining that the prosecutor was free to object to any questioning he believed violated the ruling on the motion in limine. If an objection was lodged, the district court explained, it would hear arguments on any nonobvious or unclear objection and then issue a ruling. The district court finally explained, "[H]owever you want to ask your questions when this stuff comes up is how you ask them and then we'll deal with it at the time." The record reveals a lengthy cross-examination of Officer Plumb, in which Craig's attorney was able to elicit a significant amount of information concerning the circumstances of Craig's statement. While counsel was prohibited from asking Officer Plumb whether it would violate DEA policy to record statements on his phone, counsel was able to confirm (1) that Officer Plumb had his DEA phone with him, (2) the phone had the capacity to record, (3) the DEA allows him to record statements on the phone, (4) he did not record any of the first three conversations with Craig, and (5) he only recorded the fourth interview. We see no meaningful distinction between the question counsel sought to ask and the line of questions she was permitted to ask. Accordingly, we see no error warranting a new trial on this ground.

IV.

Craig finally asserts that evidence of his 2015 conviction for distribution of a controlled substance was erroneously admitted under Federal Rule of Evidence 404(b). Specifically, he asserts that the conviction was irrelevant to the current case, highly prejudicial, and improper propensity evidence. "We review the district court's admission of evidence under Rule 404(b) for abuse of discretion." United States v. Jackson, 856 F.3d 1187, 1190 (8th Cir. 2017).

Under Rule 404(b), Craig's conviction is admissible if it is "(1) relevant to a material issue raised at trial, (2) similar in kind and close in time to the crime charged, (3) supported by sufficient evidence to support a jury finding the defendant committed the other act, and (4) of probative value not substantially outweighed by its prejudicial effect." United States v. Brown, 88 F.4th 750, 757 (8th Cir. 2023)

(citation omitted). Reversal is warranted "only when the evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." Id. at 758 (citation omitted). "It is settled in this circuit that a prior conviction for distributing drugs . . . [is] relevant under Rule 404(b) to show knowledge and intent to commit a current charge of conspiracy to distribute drugs." United States v. Davis, 867 F.3d 1021, 1029 (8th Cir. 2017) (citation omitted).

Craig explains that he never asserted that he was mistaken about the drugs or that he had not sold drugs before, ostensibly arguing that his knowledge was not at issue during the trial. Even if this is true, the prior conviction was also relevant to his intent to engage in the charged conspiracy to distribute. Id.; see also Brown, 88 F.4th at 758 (explaining that even if "the government's proposed uses of [defendant's] prior convictions to prove knowledge, motive, and intent 'were not well-explained, and might prudently have been omitted,' . . . they were relevant to his 'state of mind,' and to the elements of the charge" (citations omitted)). Additionally, any potential prejudice was lessened by the district court's provision of a jury instruction limiting the jury's consideration of Craig's prior conviction to his knowledge, intent, or absence of mistake. See id. We therefore find no abuse of discretion in the district court's admission of Craig's prior conviction.

V.

For these reasons, we affirm.

_____